# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ALBERT K. ALEXANDER** | * | **CASE NUMBER: 6:11-CV-1749** |
| | * | |
| **VERSUS** | * | **JUDGE: SUMMERHAYS** |
| | * | |
| **CITY POLICE OF LAFAYETTE,** | * | **MAGISTRATE: WHITEHURST** |
| **ET AL.** | * | |
| | * | |

**************************************************************************************************

### PLAINTIFF'S PROPOSED THIRD AMENDED
### COMPLAINT FOR VIOLATIONS OF 42 U.S.C.A. §1983, §1985(3),
### AND RELATED CLAIMS

NOW INTO COURT comes the plaintiff, Albert K. Alexander, through undersigned counsel, who respectfully submits this third supplemental and amending complaint,[1] supplemented and amended to the date of filing of his original complaint, *nunc pro tunc*,[2] as follows:

---

[1] For the sake of reference, readability, and response, the whole of Plaintiff's final *pro se* complaint (Rec. Docs. 104 & 109) has been incorporated into this petition, with edits for clarity, as Section "I."  Any additions to that section will be designated by adding additional text ([text]) or omissions ([*omitted*] or []) with brackets. Plaintiff's counsel has added numbers to the original paragraphs of Plaintiff's complaint which ceased enumerating ¶'s at "1" on page one of the original supplemental complaint.  After review of the pleadings and evidence, Plaintiff's recently enrolled counsel has also supplemented and amended Petitioner's claims by adding the original third amending claims in Section "II."  Also, several original claims have been moved to that section as Section "I" is now reserved for federal claims brought through 42 U.S.C §§ 1983 and 1985.
[2] According to Fed. R. Civ. Pro., Rule 15(c).

EXHIBIT "A"

## I.

Plaintiff hereby amends and supplements his original petition and his first and second supplemental by inserting the following paragraphs and by numbering the following paragraphs from his prior supplemental and amending petition (Rec. Docs. 104 & 109), as if copied herein *in extenso*.

**Paragraph "1" is amended and supplemented to read:**

### "JURISDICTION AND VENUE

**[1].**[3]

Pursuant to this court order dated August 16, 2018, Plaintiff, Albert K. Alexander files the amended complaint.  This is a civil action, authorized by 42 U.S.C. § 1983, whereas it arises under 42 U.S.C. § 1985 (3), as the Defendants under color of state law, deprived Mr. Albert K. Alexander ("Plaintiff" [or "Alexander"])  his of rights secured to him by the Constitution of the United States of America, including but not limited to his Fourth Amendment right to be free from unlawful searches and seizures, his Fifth Amendment right not to be deprived of his life, liberty or property without due process of law, his right, pursuant to the Eighth Amendment, not to be subjected to cruel and unusual punishment and the right to equal protection of the laws, pursuant to the Fourteenth Amendment. This Court has jurisdiction under 28 §1391 (b)(2) as it [brings claims that are violations of

---

[3] Plaintiff's *pro se* supplemental and amending petition begins with a short salutation: "Due to Plaintiff Alexander's mental and emotional inability herein, he would humbly extend his full gratitude to the Law office of S. Marie Johnson, and Charlotte G. Bordenave, whom Plaintiff wish had the time and the resources to take on Plaintiffs complaint."  This statement does not require an answer and is not an essential allegation of fact or law.

2

EXHIBIT "A"

federal statutory law.] Additionally, this Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.**"**

**Paragraph "2" is amended and supplemented to read:**

**"PARTIES**

**[2.]**

**A.**    Plaintiff, **Albert K. Alexander** (212 I-B Street Lafayette, La 70501) is an individual of the full age majority, a resident and domiciliary of Lafayette Parish, State of Louisiana."

**Section "B" under "Parties" is amended and supplemented to read:**

**"B.    i.**    Made Defendant is Lafayette Consolidated Government (705 West University Avenue Lafayette, La 70506—hereinafter 'the City') on behalf of the Lafayette City Police Department (900 East University Avenue Lafayette, La 70502) which is a municipal subdivision thereof.

Made defendants individually and/or as agents, employees and/or representatives of the municipality,[4] the following persons are named as defendants:

**iii.**    Former Chief of Police, Jim Craft, individually and/or in his capacity as Chief of Police for the City of Lafayette, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

---

[4] *See Monell v. New York Department of Social Services*, 436 U.S. 658, 693, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

EXHIBIT "A"

     **iv.**     Police Officer Kristina Bernard, individually and/or in her capacity as a police officer for the City, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

     **v.**     Police Officer Jarvis Mayfield, individually and/or in his capacity as a police officer for the City, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

     **vi.**     Police Officer Dwayne Arceneaux, individually and/or in his capacity as a police officer for the City, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

     **vii.**     Police Officer Kyle Manceaux, individually and/or in his capacity as a police officer for the City, or in his capacity as an agent of the district attorney, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

     **viii.**     Police Officer Greg Cormier, individually and/or in his capacity as a police officer for the City, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

     **ix.**     Police Officer Calvin Parker, individually and/or in his capacity as a police officer for the City, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

     **x.**     Police Officer Jeff Herbert, individually and/or in his capacity as a police officer for the City, who upon information and belief is domiciled in Lafayette Parish, Louisiana."

EXHIBIT "A"

**Paragraph "C" under "Parties" is amended and supplemented to read:**

"**C.    i.**    Former District Attorney Mike Harson, individually and/or in his official capacity, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

**ii.**    Alan P. Haney Assistant District Attorney, individually and/or in his official capacity, who upon information and belief is domiciled in Lafayette Parish, Louisiana;"

**Paragraph "D" under "Parties" is amended and supplemented to read:**

"**D.    i.**    Nelson Clayton Homes, LLC, ('Clayton Homes'), a domestic limited liability company registered to do business and doing business in Louisiana, whose registered agent for service of process is   Edwin N. Clayton, II, located at154 Primrose Drive, Belle Chase, LA 70037; upon information and belief 'Nelson Clayton Homes' d/b/a Clayton Mobile Homes (2886 NE Evangeline Thruway Lafayette, La 70501). Also made defendants are the following agents, employees and/or representatives of Clayton Homes:

**ii.**    Manager Travis Knight, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

**iii.**    Pamela Denman, who upon information and belief is domiciled in Lafayette Parish, Louisiana."

**Paragraph "E" under "Parties" is amended and supplemented to read:**

"**E.    i.**  Van Alan Homes, LLC ('Van Alan Homes'), a domestic limited liability company registered to do business and doing business in Louisiana, whose registered agent for service of process is Alan Plaisance, located  at 209 Saddleback Circle, Youngsville, LA 70592; upon information and belief 'Van Alan Homes, LLC' is d/b/a Van Alan Homes (511

EXHIBIT "A"

Shore Drive #1 Youngsville, La 70592). Also made defendants are the following agents, employees and/or representatives of Van Alan Homes:

ii.    Manager Sharon Sergi, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

iii.    Terry Penner, who upon information and belief is domiciled in Lafayette Parish, Louisiana."

**Paragraph "F" under "Parties" is amended and supplemented to read:**

F.    i. Coburn's Supply Company, Inc., ('Coburn's) a foreign corporation registered to do business and doing business in Louisiana, whose principle place of business and or domicile address is 350 Pine Street, Suite 850, Beaumont, TX 77701, and whose register agent for service of process is Capitol Corporate Services, Inc., 8550 United Plaza Building II, Suite 350, Baton Rouge , LA 70809, which is d/b/a Coburn's of Lafayette (310 Ridge Road Lafayette, La 70506); Also made defendants are the following agents, employees and/or representatives of Coburn's:

ii.    Manager Jason Domingue; who upon information and belief is domiciled in Lafayette Parish, Louisiana.

iii.    Chrissy Meche; who upon information and belief is domiciled in Lafayette Parish, Louisiana."

**Paragraph "G" under "Parties" is amended and supplemented to read:**

"G.    i.    Fred's Inc. ("Fred's"), a foreign corporation registered to do business and doing business in Louisiana, whose principle place of business and or domicile address

6

EXHIBIT "A"

is 4300 New Getwell Road, Memphis, TN 38118, (registered agent is 'Fred's' listed at that address) and whose register office is 8550 United Plaza Building (no suite indicated) Baton Rouge , LA 70809, which is d/b/a Louisiana Fred's Discount Store (2940 West Congress Street Lafayette, La 70501). Also made defendants are the following agents, employees and/or representatives of Fred's:

      **ii.**     Manager Haskin Smith, who upon information and belief is domiciled in Lafayette Parish, Louisiana."

      **Paragraph "H" under "Parties" is amended and supplemented to read:**

**"H.**    **i.**     Lowe's of Louisiana, Inc. ("Lowe's"), a domestic corporation registered to do business and doing business in Louisiana, whose principle place of business and or domicile address is 23rd Floor, One American Place, Baton Rouge, LA 70821, with Victor A. Sachse, III, Esq., also at that address as their registered agent for service.  Lowe's is d/b/a as Lowe's Home Improvement (3726 Ambassador Caffery Lafayette, La 70503). Also made defendants are the following agents, employees and/or representatives of Lowe's:

      ii.     Manager Brooke Frey, who upon information and belief is domiciled in Lafayette Parish, Louisiana.**"**

      **Paragraph "I" under "Parties" is amended and supplemented to read:**

**"I.**    **i.**     Home Depot U.S.A., Inc., a foreign corporation[5] registered to do business and doing business in Louisiana, whose registered agent for service of process is CSC

---

[5] Registered in Wilmington, DE; with a principle place of business in Atlanta, Georgia.

EXHIBIT "A"

of St. Tammany Parish, Inc., 4600 Highway 22, Suite 9; Mandeville, LA 70471; who is d/b/a Home Depot, Inc. (1700 NE Evangeline Thruway Lafayette, La 70501). Also made defendants are the following agents, employees and/or representatives of Home Depot:

ii.     Manager Kanisha Youngblood, who upon information and belief is domiciled in Lafayette Parish, Louisiana.**"**

**Paragraph "J" under "Parties" is amended and supplemented to read:**

**"J.     i.**     Walmart Inc. ("Walmart"), a foreign corporation[6] registered to do business and doing business in Louisiana, whose registered agent for service of process is C T Corporation at 3867 Plaza Tower Drive, Baton Rouge, LA 70816, and who is d/b/a and operating as each of the following two store locations:

**a.**     Lafayette Walmart (2428 West Pinhook Road Lafayette, La 70506);

**b.**     Opelousas Walmart (1629 East Creswell Lane Opelousas, La 70570);

Also made defendants are the following agents, employees and/or representatives of Walmart:

ii.     Manager Carol Mitchell, who upon information and belief is domiciled in Lafayette Parish, Louisiana.**"**

**Paragraph "K" under "Parties" is amended and supplemented to read:**

---

[6] Walmart Inc.'s domicile is in Wilmington, DE, and its principle place of business if in Bentonville, AR.

EXHIBIT "A"

"**K.     i.**      Sam's Club ('Sam's), a foreign corporation licensed to do business in Louisiana whose registered agent for service of process will be determined through discovery and who is d/b/a Sam' s Wholesale (Club) (3222 Ambassador Caffery Parkway Lafayette, LA 70506). Also made defendants are the following agents, employees and/or representatives of Sam's:

**ii.**      Manager Sandy Mixon, who upon information and belief is domiciled in Lafayette Parish, Louisiana;

**iii.**      Darla Montgomery, who upon information and belief is domiciled in Lafayette Parish, Louisiana."

**Paragraph "L" under "Parties" is amended and supplemented to read:**

"**L.**     A-Z Insurance Companies; respectively, each of these fictitiously identified entities is a domestic or foreign insurance company authorized to do and doing business in the State of Louisiana. Each of these fictitiously identified companies provided at least one policy of insurance to each named defendant above, which policy covered losses suffered by the Plaintiff as a result of the actions described in detail below."

**Paragraphs "4" through "" are amended supplemented to read:[7]**

**"PRELIMINARY ADVERSE ACTION STATEMENT**

**[**4.**]**

On January 4, 2011, agents/employees of the Lafayette City Police Department [hereinafter, "City Police" or "Police" ], intentionally, recklessly, and maliciously, caused

---

[7] Additional or supplemental text is indicated by brackets [text].

EXHIBIT "A"

to be issued a search warrant for the premises located at 212 1-B Street, Lafayette , Louisiana 70501, to search and seize "firearms." The agents, however, under color of law, knowingly presented false, stale and outdated information to the judicial officer to obtain the search warrant. Upon executing the unconstitutionally obtained search warrant and not finding any of the firearm related items listed in the warrant, the officers violated the long-established rule that a general exploratory search may not be made of the premises even with valid search warrant.[8] Further, Plaintiff was subsequently arrested and prosecuted based on evidence obtained through a series of unlawful acts. Unconstitutional searches and seizures and loss of his liberty and/or property without due process of law.

## STATEMENT OF FACTS

### [5.]

On December 29, 2010, City Police Officer Jason Eppley, along with Corporal Gustavo Sanchez, were dispatched to 310 Sampson Avenue, Lafayette, Louisiana about a disturbance, which allegedly occurred on December 28, 2010, at 212 1-B Street. Upon arrival, the officers encountered Sharlette Alexander and Dashawna Morrison who advised that they had engaged in a verbal altercation with Plaintiff, on December 28, 2010, who asked them to leave his residence and [they also advised] that Plaintiff had committed batteries upon them during the altercation. In his report of the December 29th investigation, Jason Eppley noted there were "suspicious circumstances" as when they Encountered Sharlette Alexander and Dashawna Morrison on December 28th Sharlette

---

[8] *Woo Lai Chun v. United States*, 274 F. 2d 708 (9th Cir. 1960); *see also Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

EXHIBIT "A"

Alexander stated that after the verbal altercation, Plaintiff had asked them to leave the residence and they wanted to retrieve their personal items from 2121-B Street. Neither mentioned, on December 28, 2010, that Plaintiff had physically assaulted either of them and neither, on December 28, 2010 nor December 29, 2010, had there been any injuries consistent with them having [been] assaulted. According to Officer Jason Eppley, Sharlette Alexander provided a statement about verbal altercation, and Dashawna Morrision went back into the residence and did not speak with the officers at all on December 29, 2010.

**[6.]**

On January 2, 2011, Officer Calvin Parker, according to his supplemental report, was contacted by Officer Jarvis Mayfield [*omitted*] about an alleged assault believed to have been committed by Plaintiff upon his son, Todd Alexander. "Todd Alexander, the Plaintiff's son complained that in a telephone conversation on December 31, 2010, his father threaten[ed] to kill his [Todd's] one-year old daughter, Ariana. On the same day, Officer Calvin Parker stated, in his report that an "anonymous" family member of Plaintiff['s] reported that Plaintiff was a convicted felon in possession of a firearm and stolen items at his residence.[9]

**[7.]**

On January 3, 2011, Officer Kristina Bernard interviewed Sharlette Alexander and Deshawna Morrison, who allegedly advised that Plaintiff had committed batteries on them on December 28, 2010, and that Plaintiff was in possession of various items

---

[9] At no time did Plaintiff threaten anyone in his family; this is a false allegation.

11

EXHIBIT "A"

of stolen property [10] and that Plaintiff was aware that the property was stolen. On January 3, 2011, Dashawna Morrison failed to appear in court for arraignment of a theft at Wal-Mart (Lafayette), in order to give a false statement to officer Kristina Bernard; who failed to run a criminal background check on Deshawna Morrison who took her circumstances of a theft and falsely placed it on Plaintiff Albert K. Alexander. Also, on January 3, 2011, Officer Calvin Parker spoke with Officer Kristina Bernard, about the information he received from the "anonymous" family member regarding allegedly stolen items at Plaintiffs residence. Officer Kristiana Bernard advised that she had received the same information from Sharlette Alexander and Deshawna Morrison that were alleged victims of simple batteries alleged to have been committed by Plaintiff. Alexander and Morrison also alleged that plaintiff had a "brown and black" shotgun in the home. Details captured in this court record related document: #53, Exhibit C, D, E.

**[8.]**

On January 3, 2011, a search warrant was sought and obtained by Officer Kristina Bernard for the purpose to seize all "'firearms, ammunition, ammunition clips, ammunition boxes, firearm storage boxes, spent projectiles, spent cartridges, firearms, or ammunition papers[."] On January 3, 2011, affiants, Officer Kristina Bernard and Officer Calvin Parker, included information, in their applications for search and arrest warrants, allegations that the Plaintiff had two arrests for kidnapping (only one of which occurred on or about July 17, 1984; Plaintiff has no

---

[10] On April 19, 20 11, a fugitive warrant was issued for Deshawna Morrison after failure to appear in court for her arraignment, on January 3, 2011.

EXHIBIT "A"

other arrest/charges for kidnapping). Both officers Kristina Bernard and Calvin Parker, together, applied for a search warrant of the residence located at 212 1-B Street. Officer Calvin Parker submitted an affidavit for an arrest warrant for Plaintiff for the alleged threat to kill Todd Alexander's one-year old daughter, Ariana.

**[9.]**

On January 4, 2011, the search warrant was executed by City Police [S.W.A.T.] Team and members of the City Police crime suppression unit, along with officers Kristina Bernard and Calvin Parker. No items listed on the search warrant such as firearms and ammunition were found. After no items listed on the search warrant was found in the residence, the officers conducted an exploratory search warrant, and Officer Jeff Hebert inspected other items by copying the serial numbers on those items and photographing the items. [Parker, Bernard, and other police present deduced that because Mr. Alexander had purchased new items for his home, that were still boxed, and because he was African American, he must have stolen the items. They immediately sought to persuade representatives from stores in the Lafayette area to jointly help them frame Alexander.]

**[10.]**

On January 5, 2011, Officer Kristina Bernard applied for a second search warrant for 212 I-B Street based upon the exploratory search of the residence from the first search warrant. Numerous items alleged to be stolen were seized, yet none of the items had been reported stolen by anyone. Other items were inspected, serial numbers collected and photographed. On January 6, 2011, Officer Kristina Bernard applied for and received a third search warrant for 212 1-B Street based upon the

EXHIBIT "A"

exploratory search from the first and second warrants. The warrant was executed the same day, numerous items alleged to be stolen were seized and given to the alleged owners. Officer Kristina Bernard then began conspiring with the loss prevention teams and mangers from several stores by providing serial numbers on items seized and requesting that the stores' employees come to the residence of the Plaintiff to make claims on the seized items. Home Depot's loss prevention team manager Kanisha Youngblood, claimed several items were given over to her by Lafayette City Police. As was done with Kanisha Youngblood's agents and employees, representatives of Lowe's Home Improvement including Brooke Frey; representatives of Clayton Homes including Pamela Denman, and representatives of Van Allen Homes including Sharon Sergi were allowed to inspect the seized items, make claims on behalf of their respective employers, and were ultimately put in possession[, and did take possession,] of said items by the agents, employees and/or representatives of the City Police. The remainder of the unlawfully seized items were transported to the Lafayette City Police Department.

**[11.]**

Further, on January 2, 2011, Office Kristina Bernard contacted and conspired with Fred's Discount Store Manager Haskim Smith, who also made claims on various items seized by the Lafayette City Police. After which said items were given over to Fred's Discount Store. On January 12, 2011 Officer Kristina Bernard and Sergeant Greg Cormier conspired with and coerced representatives of Sam's Wholesale (Club) to make claims for items seized from Plaintiff's residence. On January 12, 2011, Opelousas Walmart loss prevention officer, Leon Vedrienne claimed several of the

14

EXHIBIT "A"

seized items that had been removed from Plaintiff's residence. Lafayette Walmart manager Carol Mitchell claimed items as well. Neither of the stores had reported any of the claimed items as stolen.  To this date no store has identified any piece of moveable merchandise seized from the Alexander home as stolen by matching the allegedly stolen movable with the serial number of a moveable identified as stolen.

**[12.]**

On January 14, 2011 Officer Calvin Parker filed four more charges against Plaintiff for possession of stolen items stemming from the unlawful seizure of Plaintiff's belongings. The 15th Judicial District court, State of Louisiana, through Assistant District Attorney Alan P. Haney, filed a bill of information charging Plaintiff with two counts (2) of Simple Battery, Improper Telephone Communication and nine counts (9) Possession of Stolen Things.

**The following paragraphs 13 and 14 are amended to the "Facts" section:**

**"13.**

Alexander was incarcerated for over a year awaiting trial on these charges. Alexander was released after he was acquitted by the jury. Any and all remaining charges were eventually dismissed by the District Attorney.

**CLAIMS**

**Plaintiff's "Claims" section is amended, as follows:**

**Claims Under 42 U.S.C. §1982 and §1985(3)**

**[14.**

EXHIBIT "A"

**Plaintiff's Claim[s] No. (1)** raises violations of the Constitution of the United States of America, Fourth, Fifth, and Fourteenth Amendments,[11] for the unlawful search and seizure of Plaintiff's residence and person  (*See Monell v. New York Department of Social Services*, 436 U.S. 658, 693, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978))[12] with personal involvement, by the City of Lafayette Police Department (the "Department") and its former "commander-in- chief," Chief Jim Craft ("Chief Craft") without due process of law. Plaintiff names Defendant Chief Craft in his official capacity as contemplated under *Monell, supra*.][13]

**[A.**    As further detailed below, and as will be shown in discovery and proven at trial, Chief Craft was the "decisionmaker" and/or the "moving force"[14] behind a culture of discriminatory, retaliatory, and unconstitutional practices by the Department and its officer, agents and associates, that went unchecked during his tenure.  His department policy, procedure, and custom were discriminatory of race and economic

---

[11] [*See Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042 (1978) for the proposition that fourteenth amendment cases are typically considered in the scope of the additional constitutional provisions that are violated, which in this instance would be the 4th amendment.

[12] [*See also, Canton v. City of Harris*, 489 U.S. 378, 389 (1989); *see also, Connick v. Thompson*, 131 S. Ct. 1350 (2011)].

[13] A suit against an official in his official capacity is a suit against the employing governmental entity, not the individual officer. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a party in the violation of federal law.' " *Id*. (*quoting Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). To establish a county's liability on a § 1983 claim, a plaintiff must show the county had some inadequate custom or policy that acted as the moving force behind a constitutional violation. *Forgan v. Howard Cnty., Tex.*, 494 F.3d 518, 522 (5th Cir. 2007) (*citing Monell v. N.Y.C. Dep't of Soc. Servs*., 436 U.S. 658, 690–91 (1978)). In other words, a plaintiff must provide proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Hous*., 237 F.3d 567, 578 (5th Cir. 2001) (*citing Monell*, 436 U.S. at 694).  Plaintiff's last paragraph (in each section), out of an abundance of caution, names each official personally.  However, should the actors not be found to have been state actors acting "under the color of law", as per 42 U.S.C. § 1983, then the complaint would not properly be before this Court, although it may still raise cognizable state law claims. In that case we would respectfully requests the Court transfer the case to state court.

[14] *Id*.

16

status and deliberately indifferent to the civil rights and constitutional protections of citizens.  Upon information and belief, at all times pertinent hereto, the municipal agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford the new, mostly boxed, moveable goods, with officials having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs.**]**

**[B.**    Craft's policy of permitting an Assistant District Attorney to maintain an office in the police station threatened the objectivity of investigations and encouraged a culture of retaliation and malicious prosecution that sought convictions at any cost, constitutional rights notwithstanding. This unconstitutional conduct has been the subject of numerous lawsuits and media reports.  Chief Craft, either intentionally or with deliberate indifference, failed to supervise, train, and discipline officers in manner to uphold constitutional policies and safeguards: the result was abusive and racially discriminatory practices by the department, its agents, and associates.] *Canton v. Harris*, 489 U.S. 378 (1989). Upon information and belief, the unconstitutional actions and failures of [Chief Craft] was the result of said [Department's] retaliation against Plaintiff's June 17, 2009 filing of a 42 U.S.C § 1983 claim against the department (*Albert K.  Alexander   v. Lafayette Consolidated Government, et al*.; Civil Action No. 6:09-1016 in this Honorable [C]ourt).**]**

**[B.**    Alternatively, and only if he is not found to have acted in his "official capacity" as a "state actor" "under the color of law" then Plaintiff would request that

EXHIBIT "A"

Chief Craft personally liable for malicious prosecution or other state law claims as plead *infra*.**]**

**C.**      Upon information and belief, on or before January 4, 2011, Chief Craft, [*omitted*] maintained a policy or custom allowing employees under his control to participate in unconstitutional search and seizures, [under color of state law [and] while during the course and scope of their employment].  [Chief Craft, intentionally or with deliberate indifference, either established policy and custom or allowed lawful existing custom and policy to be subverted, in a manner that caused civil rights and constitutional abuses including but not limited to discriminatorily seizing [P]laintiff's property, falsely arresting and incarcerating Plaintiff, maliciously prosecuting Plaintiff, and intentionally inflicting severe emotional distress on Plaintiff.] Therefore, Chief Craft, in his official capacity as the Chief of the Lafayette City Police Department (and agent or official of the Lafayette Consolidated Government) is responsible under *Monell v. New York Department of Social Services*, 436 U.S. 658, 693, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), for the deliberately indifferent authorization, condonation, and ratification of any of the acts of agents, employees and/or representatives, of the department—as elucidated hereinafter and below— which deprived Plaintiff of rights secured to him by the constitution of the United States of America and the State of Louisiana.[15]

**[D**.      Upon information and belief, on or before January 4, 2011, the defendant Former Lafayette City Police Chief Jim Craft implicated unconstitutional

---

[15] State Constitutional Claims have been added in Part "II."

EXHIBIT "A"

policies [and/or customs which allowed and encouraged the illegal acts. Chief Craft, either with malintent or deliberate indifference, reviewed and approved of the affidavit[s] [and applications for a search warrants] involving firearms, etc. submitted before him for approval by Police Officer Kristina Bernard, to obtain a search warrant on Plaintiff Albert K. Alexander's, residence located at 212 1-8 Street Lafayette, La 70501. The affidavit was either knowingly, or with deliberate and reckless indifference, constructed from perjury and false swearing and was submitted without any probable cause of the commission of any crime committed by the plaintiff involving firearms, etc. The examples and details captured in these court records as related document # 1. Exhibit "A"[16] shows that Chief of Police approved each unconstitutional warrant by approving the document with his signature or mark at the top left-hand corner of the search warrant.]

**[E.]**   Upon information and belief, on January 4, 2011, Former Lafayette City Police Chief Jim Craft authorized the use of Lafayette Police Department S.W.A.T. Team and even an army tank to retrieve Plaintiff's furniture to be used as evidence against him in a malicious prosecution which caused Plaintiff's severe emotional distress. Details captured in this court record related document: #12.

**[F.]**   Upon information and belief, on January 6, 2011, Chief Craft, in his capacity as head of the Department, is liable under [*Monell v. New York Department of Social Services,* 436 U.S. 658, 693, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)] in the above paragraph "D" the aforementioned acts of the defendant Craft violated

---

[16] Plaintiff Identifies these exhibits by their caption.

EXHIBIT "A"

Louisiana Code of criminal procedure Article 167, when property is seized pursuant to a search warrant; it shall be retained under the direction of the judge, if seized property is not to be used as evidence it shall be disposed of according to the law, under the direction of a judge.  Chief Craft authorized the "return" of items seized from the Alexander residence to store agents and employees who had been contacted by Parker and Bernard.  At no time did Craft, Bernard, or Parker seek a hearing or judicial approval of this redistribution of movables; nor did Craft, *et al.* even require the stores to show probable, or reasonable suspicion, that the moveables were stolen, e.g. by serial number identification.

[G.    Upon information and belief, on January 6, 2011, in conjunction with paragraph "E," Chief Craft allowed Police Officer Kristina Bernard ("Bernard") and Officer Calvin Parker ("Perker") to perform an illegal act in the course and scope of their employment.  [These officers falsely alleged in their report] that a total of eleven (11) items were taken from Clayton Mobile Home in two (2) separate burglaries; where as police seized twenty-three (23) items from plaintiff's residence and released it to Clayton Mobile Homes on January 6, 2011, before Plaintiff was arrested on January 7, 2011, and before plaintiff was formerly charged by the Assistant District Attorney Alan P. Haney with the alleged possession of stolen goods on March 16, 2011. Lafayette City Police in concert with the various merchants who wrongfully claimed and took possession of Plaintiffs property, violated LSA C.R.P. Article 167, where in property seized pursuant to a search warrant shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law, under the direction of

20

the judge. Details captured in this court record related documents: # 1, # 12, # 62, # 63, # 82, # 83, # 84.**]**

**[H.** Upon information and belief, on or about January 12, 2011, Former Chief of Police Jim Craft and his designated officers tried to make it appear that Plaintiff Albert K. Alexander's residence 212 1-B Street was an abandon building used for storing stolen property; to justify obtaining illegal warrants for firearms then, thereafter to cover up their illegal search and confiscation of plaintiff's property, they called in the Lafayette Consolidated government planning, zoning, and codes department after they themselves damaged Plaintiff Albert K. Alexander's residence by cutting main electrical wiring, damaging water line and internal plumbing; in order to have it condemned and torn down. First Plaintiff Alexander's residence was given four (4) violations and listing it as occupying a family of one or two members with utilities on. Thereafter, on the same day Lafayette planning, zoning, and codes department officer, inspector Mark Harson conspired with Former Chief Craft, then listing Plaintiff Alexander's residence as having sixteen (16) violations, being a secured vacant building with no electricity; as to the previous violation from four (4) to sixteen (16) violations.**]**

**[I.** Chief Craft encouraged his officers to aid in the prosecution of Plaintiff under these false pretenses, encouraging this retaliatory and abusive use of process against the plaintiff. He encouraged his officers to work with Assistant District Attorney Alex Haney ("ADA Haney") to build a false case against Alexander and to seek a conviction under false pretenses and using fabricated and false evidence, including but not limited to encouraging the fabrication or misrepresentation of

21

EXHIBIT "A"

documentary evidence in a failed attempt to prove Alexander stole goods, when they failed to find evidence of other crimes or of a weapon.**]**

**[J.**    The actions stated above amount to an unreasonable seizure[17] as the plaintiff was arrested for a misdemeanor, non-violent charge to the combined force of a tank and a S.W.A.T. Team, which was a patently unreasonable show of force.[18]] These claims are for both the unreasonable seizure of property, and for over a year, the seizure of Plaintiff, himself.]

**[H.**    The claims above can be summarized as, but not limited to, following:

**i)**    42 U.S.C. §1983 claim for unlawful search and seizure due to a defective warrant on account of deliberately indifferent policies and/or supervision by Craft pursuant to *Monell, inter alia*;

**ii)**    42 U.S.C. §1983 claim for unlawful search and seizure due to a defective warrant by direct authorization and/or participation of Craft pursuant to *Monell*, inter alia;

**iii)**    42 U.S.C. §1983 claim for unlawful seizure of person on account of deliberately indifferent policy and/or supervision by Craft pursuant to *Monell*;

**iv)**    42 U.S.C. §1983 claim for unlawful seizure of person by direct authorization and/or participation of Craft pursuant to *Monell*;

---

[17] *See California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547 (1991), in which the Supreme Court held that in order for there to be a seizure for Fourth Amendment purposes, there must either be (1) some application of physical force, even if extremely slight, or (2) a show of authority to which the subject yields. 'The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." Id., 499 U.S. at 625-26, 111 S.Ct. at 1550.  *See also*, as per Graham v. Connor, 490 U.S. 386 (1989).
[18] *As per Graham v. Connor*, 490 U.S. 386 (1989).

EXHIBIT "A"

**v)**     42 U.S.C. §1983 claim for unlawful seizure and permanent deprivation of property of on account of deliberately indifferent policy and/or supervision by Craft pursuant to *Monell*;

**vi**)     42 U.S.C. §1983 claim for unlawful seizure and permanent deprivation of property by direct authorization and/or participation of Craft pursuant to *Monell*;

**vi)**     42 U.S.C. §1983 claim for failure to train officers in constitutional protections and/or for adopting a policy of utilizing an "in house" prosecutor, who was given an office in police station, so that Craft could influence and/or unconstitutionally control prosecutions, which was deliberately indifferent to constitutional protections and rights, and unreasonably risked discrimination, bias, and other abuses of process, prosecutorial misconduct, and abuse of police power;

**v)**     42 U.S.C. §1983 claim for directly and with deliberate indifference, authorizing unconstitutional applications for search warrants, and for adopting unconstitutional policies regarding applications for warrants, including failing to train officers in reasonable applications for warrants, and using unlawful and unethical prosecutor involvement in obtaining warrants.

**vi)**     42 U.S.C. §1985(3) conspiracy with other law enforcement officials to commit unlawful seizure of person;

**vii)**     42 U.S.C. §1985(3) conspiracy with local merchant defendants to commit unlawful seizure and permanent deprivation of property;

EXHIBIT "A"

viii)   42 U.S.C. §1985(3) conspiracy to commit or aid and abet a malicious prosecution;

ix)   42 U.S.C. §1983 claim for unreasonable force used during search, e.g. S.W.A.T. team and tank.]

*See* further claims against Chief Craft, as added by counsel, in Section II(A) "Additional Claims," including equal protection claims.

**[16.**

**Plaintiff's Claim[s] No. (2)** raise violations of the Constitution of the United States of America Fourth, Fifth, and Eighth Amendments,  including by a police conspiracy to cover up police crime, including but not limited to: false swearing, perjury, fraud, malicious prosecution, and abuse of process by Officers Jarvis Mayfield ("Mayfield"), Calvin Parker ("Parker"), and Kristina Bernard ("Bernard"). [The unconstitutional conduct of the defendants, state actors under the color of law, in their official capacity, and their continuing abuse of authority, is, as follows:]

A.    This matter arises from a long-term vendetta of the Lafayette City Police Department to defame, discriminate, and violate the civil rights of plaintiff Albert K. Alexander The incident, which is the subject matter of this suit is the second event in which the Lafayette City Police Department while in collusion with the Lafayette District Attorney office has unlawfully arrested plaintiff. Officers of the Lafayette City Police department illegally obtained a search warrant for the home of the plaintiff, and[,] when they could not find what they were looking for[,] they continued to pursue any type of information that could lead to an arrest of Plaintiff Albert K. Alexander.

24

The Lafayette City Police Department [organized and executed] a wild goose chase after illegally entering the residence of plaintiff and did not stop until they [] unlawfully obtained an arrest warrant. However, the documentation and evidence provided to the signing Judge of the arrest warrant was misleading and altered to ensure that the Lafayette City Police Department would acquire what they were seeking.

[**B.**]    Upon information and belief, on or about January 2, 2011, Officer Calvin Parker ("Parker") was called by Mayfield to come to his apartment at Whisper Oaks Apartments, [ ] number 108 so that they could [plot] against Plaintiff in order to be honored by their superior former Chief Craft [*omitted*], [in full knowledge] that plaintiff Alexander had filed a civil right[s] action against their department (*Albert K. Alexander v. Lafayette Consolidated government, et al.*; Civil Action No.6:09-1016 in this honorable court.) "Retaliation can take many forms."

[**C.**]    Upon information and belief, on or about January 2, 2011, Parker was called by Mayfield to come to his apartment; where they conspired to violate [the Plaintiff's'] constitutional rights [] by using members of Plaintiff's family- [with whom there were some family disagreement(s)]; [and by] taking that situation and [manipulating the facts] to fabricate that Plaintiff had violated the criminal law.  [Parker and Mayfield each acted for the benefit and reward of receiving money] from one of the plaintiff's other family members, and, at the same time, to be loyal to [and win favor from] Chief Craft.

[**D.**]    Upon information and belief, on or about January 2, 2011, Parker contacted his partner officer Bernard and advised her that officer Mayfield had a family member of Plaintiff who lived in Whispering Oaks apartment[s] and that

EXHIBIT "A"

Mayfield and Parker were conspiring to put together a plan to charge Plaintiff Alexander with a crime of improper telephone communications, [based on the officers encouraging false allegations of Alexander's family member.] Bernard advised officer Parker that she too was looking into an incident involving the same suspect, involving an alleged simple battery charge, which the responding officers had reported was contrary to the evidence.

[E.]   Upon information and belief, on or about January 2, 2011, Mayfield, Parker and Bernard, who[] had illegally searched Plaintiff's, residence for firearm when plaintiff Alexander, [had never been alleged to have committed a crime] with a firearm.   That illegal search [, based on the fabricated grounds,] led to plaintiff Alexander being illegally arrested and charged with (9) nine counts of possession of stolen things belonging to him as well as improper phone communication and (2) two counts of simple battery.   [Defendants Parker and Mayfield (as well as Bernard) assumed that the items were stolen because Plaintiff was African American and because they assumed that Plaintiff was of too low a social and economic status to afford and possess such merchandise still in boxes.]

[F.]   Upon information and belief, on or about January 2, 2011, Mayfield, Parker, and Bernard overlooked conducting an inquiry of Plaintiff's family members [Warren Alexander ("W. Alexander"), and Albert Kirk Gary ("Gary"), because of the lucrative funds they were receiving from those persons.]   [Also,] officer Kristina Bernard, looked the other way[:] that one of the alleged victims was giving her a report on plaintiff while she had a warrant out for her arrest for not showing up to court the

26

EXHIBIT "A"

same day she gave her statement. Details captured in this courts records related documents: #12, #53, #55, #82, #83, #89.

[G. No reasonable officer would have relied on such information and/or sought such information as the basis for criminal charges. Mayfield, Parker, and Bernard, conspired to accomplish these violations, and sought and obtained aid from the other co-defendants who each conspired to accomplish these violations and fabricate a false narrative against the plaintiff for the purpose depriving him of property and liberty.] These claims are for both the unreasonable seizure of property, and the over a year seizure of Plaintiff, himself.

[H. The claims above can be summarized enumerated as, but not limited to, the following:

     i) 42 U.S.C. §1983 claim for unlawful search and seizure of residence due to a defective warrant;

     ii) 42 U.S.C. §1983 claim for unlawful seizure and disposal of personal property;

     iii) 42 U.S.C. §1983 claim for unlawful seizure of person;

     iv) 42 U.S.C. §1985(3) conspiracy to commit unlawful seizure of person;

     v) 42 U.S.C. §1985(3) conspiracy to commit unlawful seizure of property;

     vi) 42 U.S.C. §1985(3) conspiracy to commit or aid and abet a malicious

prosecution.

EXHIBIT "A"

vii)   42 U.S.C. §1983 claim for unreasonable force used during search, e.g. S.W.A.T. team and tank.

viii)   42 U.S.C. §1985(3) conspiracy to cover up constitutional violations.]

## [17.]

**Plaintiff's Claim[s] No. (3)** raise violations of the Constitution of the United States of America, Fourth and Fourteenth Amendments, by Officers Kristina Bernard and Calvin Parker, *et al.*, as established in *Frank vs Delaware*, 438 U.S. 154, 17198 S. Ct. 2674, 57C.Ed. 22 667(1978).[19] The unconstitutional conduct of the defendant officer Kristian Bernard and Officer Calvin Parker, *et al.*, in falsely obtaining a warrant []is evidenced, as follows:

**(A)**   Upon information and belief, on or before January 4, through January 6, 2011, Officers Bernard and Parker, with deliberate indifference and/or intentionally provided and included false [and stale] information in the warrant or application to obtain a warrant for search and seizure and the arrest of the plaintiff, Albert K Alexander.  [Bernard communicated with Parker through this entire time as they were involved in a romantic relationship.  As shown by the initial police report, once Bernard identified Plaintiff as the perpetrator, she disregarded the opinion of the initial investigating officers that the family complaint lacked evidence and was fabricated.] Bernard also presented to the court a twenty-year-old kidnapping charge (in which defendant Plaintiff, without any knowledge of the judicial system, plead to kidnapping

---

[19] *See also, Malley v. Briggs*, 475 U.S. 335, 106 S. CT. 1092, 1096, 89 L.Ed.2d 271, 278 (1986) for unconstitutional swearing of complaining witnesses.

EXHIBIT "A"

his own wife) without mentioning the age of the information, to influence the duty judge to sign the search warrant.  Bernard and Parker committed these acts under the color of state authority and in the scope of their duties.[20]

**(B)**       Upon information and belief, January 4, through January 6, 2011, during execution of the search warrant for firearms and ammunitions the officers conducted an exploratory search of plaintiff Alexander's residence and personal property that was not listed in the search warrant. [Additionally, the officers seized personal property of Plaintiff Alexander, which was not listed on the warrant and they began an investigation to verify if the seized personal items were stolen with nothing but a presumption that Alexander should not have such items because he was African American or as, as they presumed, of a lower socio-economic status. **Unbelievably, their "investigation" involved the officers contacting, conspiring, and inviting mangers and loss prevention personnel from local department stores into the plaintiff's residence where they were able to play judge and jury by searching and seizing items that they determined to be their store property.]** The officers alleged that the items were stolen; although no reports of items being stolen were made and /or filed, but the officer still charged Plaintiff Alexander, with possession of stolen [property]. [Furthermore, other items were taken into custody and placed into evidence [that remains unclaimable because it either was not reported stolen or it was reported and then distributed to third partied but not held in evidence.]

---

[20] Alternatively, if they are not found to have acted in their "official capacity" as a "state actor" "under the color of law" then Plaintiff would plead pendant state law claims of unlawful seizure, malicious prosecution, conversion, etc.

EXHIBIT "A"

**(C)**     Upon information and belief, on January 4, through January 6, 2011, The Lafayette City Police Department also illegally seized plaintiff Alexander['s] and his family's personal property as well as called in employees from local department stores to jointly cooperate in taking possession and permanent deprivation of the Plaintiff's property. **Lafayette City Police Department authorized employees of Lowe's Home Improvement, Wal-Mart (Lafayette), Wal-Mart (Opelousas), Home Depot, Fred's Discount Store, Clayton Mobile Home, Van Allen Homes, Sam's Wholesale to illegally enter the residence of plaintiff Alexander and to confiscate the private property of Alexander and his family; <u>then they each took the items of moveable property into their possession and left with them.</u>** The above actions of the Lafayette City Police Department and the employees of the local department stores were able to conduct these illicit acts all without providing valid documentation, serial numbers, and/or a police report to substantiate the same. Lafayette Police Department did not follow policy/ procedure.  Store merchants and their agents did not adhere to store procedure for investigating thefts, nor did they adhere to normal police procedure.  Police and store officials, employees and agents, operated jointly, under the color and guise of law, but without proper legal authority, in such a manner as to destroy all traces of the property and with malicious intent. If an alleged crime is believed to have occurred, the arresting officer(s) must take the alleged stolen property into custody until trial regarding the same can be conducted.

**(D)**     Upon information and belief, on January 4, through January 6, 2011, officer Kristina Bernard, activated the Lafayette City Police Department S.W.A.T. Team. Officer Kristina Bernard was assigned the team leader for the swat team by

30

EXHIBIT "A"

the swat Commander. Officer Kristina Bernard set up a plan for the entry of the plaintiff[']s residence. Having officers with ballistic shields, handguns, AR-15 rifle, diversionary devices, a hooligan tool and a key. Officer Kristina Bernard was so excited that she managed the S.W.A.T. team she let it be known that she also had Acadian Ambulance on standby, all this [on account] of what would, had they even amounted to crimes, at the most, would amount to misdemeanor theft. [Bernard would appear to be willing to take a life, or have one of her fellow officers take life, of the plaintiff over property, which she lacked even reasonable suspicion to believe was stolen.]

**(E)**    Upon informantion and belief, on January 4, through January 6, 2011, Officer Bernard handled the case as if it was a high-profile case, showing up to the plaintiff's residence with the S.W.A.T. Team and an army tank. [*omitted*] All these measures were put into place for alleged misdemeanor charges [where there was never a confirmed report of a weapon and where the initial charges involved a family dispute alleged by witnesses [who has a strong motive to lie and fabricate the allegations.] The occurrence their unwarranted actions implanted were thoughts of fear and distrust in the neighbors of Plaintiff Alexander, although he has been living by them for a long time. Officer Kristina Bernard used the illegally obtained search warrant as an opportunity to destroy the residence and personal property of plaintiff Alexander and also to embarrass and harass him into accepting an unwarranted plea arrangement through an overwhelming showing of unnecessary force.

**(F)**    Upon information and belief, on January 14, 2011, Officer Parker filed four (4) more fabricated charges against plaintiff, for possession of stolen things

EXHIBIT "A"

stemming from unlawful seizure of Plaintiff's belongings. The 15th Judicial District Court, State of Louisiana, through Assistant District Attorney Alan P. Haney, filed a bill of information charging plaintiff Alexander with Simple Battery (2 counts); Improper Telephone Communication and Possession of Stolen Things (9 counts) based on officer Parker's handywork.

(G)     Upon information and belief, Officer Parker's and Officer Bernard's unconstitutional conduct resulted in the malicious prosecution of plaintiff by filing additional charges with affidavit for warrant of arrest in the following manner: no probable cause, commencement of the criminal proceedings, no legal cause or connection to any crime, charges possibly will be terminated, and confining measures to resolve the matter, which [were] wrongfully obtained.  Parker's actions lacked a reasonable basis, appear to be driven by a retaliatory animus, and fall lower than the standard of what any reasonable officer would do in the same situation considering the totality of the circumstances.

(H)     Upon information and belief, Parker's and Bernard's unconstitutional conduct resulted in the unreasonable search and seizure and false arrest and imprisonment of plaintiff; [amounting to violations] of [P]laintiff's rights under the Fourth, [Fifth], and Fourteenth Amendments [to the United States Constitution] in the following manner: fabricating and acting upon a knowingly false affidavit, perjury, arresting without probable cause, deceiving judicial officials; and filing a false verified complaint. Details captured in this court records related documents: #12, #32, #24, #25, #28, #53, #54, #55, #56, #57, #58, #59, #60, #61, #62, #63, #64, #65, #66, #68, #69, #70, #72, #74, #76, #78, #80, #81, #82, #83, #84, #89, #90, #91.

EXHIBIT "A"

**[(I)**    No reasonable officer would have relied on such information, some stale, some false, some scant and lacking in credibility.  Making an affidavit in support of an application for a search warrant and an arrest warrant that includes "a false statement knowingly and intentionally, or with reckless disregard for the truth," and if, without that false statement, the application would not suffice to establish probable cause, then the warrant is invalid. Both Bernard and Parker conspired with the other co-defendants to accomplish these violations, and each co-defendant conspired and took actions in furtherance to accomplish these constitutional violations and to fabricate a false police report narrative against the plaintiff for the sole purpose depriving him of property and liberty. These claims are for both the unreasonable seizure of property, and the over a year seizure of Plaintiff, himself.  Upon information and belief these officers acted intentionally.**]**

**[(J)**    The claims above can be summarized and enumerated as, but not limited to, the following:

> **i)**    42 U.S.C. §1983 claim for unlawful search and seizure of residence due to a defective warrant (*Frank*);
>
> **ii)**    42 U.S.C. §1983 claim for unlawful seizure and disposal of personal property;
>
> **iii)**    42 U.S.C. §1983 claim for unlawful seizure of person;
>
> **iv)**    42 U.S.C. §1985(3) conspiracy to commit unlawful seizure of person;

EXHIBIT "A"

v)    42 U.S.C. §1985(3) conspiracy to commit unlawful seizure of

person

and property;

vi)    42 U.S.C. §1985(3) conspiracy to commit or aid and abet a

malicious

prosecution;

vii)    42 U.S.C. §1983 claim for unreasonable force used during

search, e.g. S.W.A.T. team and tank.

viii)    42 U.S.C. §1985(3) conspiracy to cover up constitutional

violations.**]**

**[16.]**

**Plaintiff's Claim[s] No. (4)** raise violations of the Constitution of the United

States Constitution, Fourth, Fifth, and Fourteenth Amendments, as established in

*Frank vs Delaware*, 438 U.S 154, 17 198 S.CT. 2674, 57C.Ed. 2d 667 (1978) by

Officer Kyle P. Manceaux (non-affiant), [as follows]:

**[(A)]** Upon information and belief, on January 3, through January 6, 2011, Non-

Affiant Officer Kyle P. Manceaux, being a veteran officer of the Lafayette City Police

Department, knowingly and intentionally retrieved on January 3, 2011, plaintiff

Alexander's FBI Rap Sheet and instructed Officers Bernard and Parker, how to

secure an application for search warrant and Affidavit for warrant of Arrest using stale

and out dated, misleading information from plaintiff's FBI Rap Sheet omitting dates

by their inclusion or exclusion impermissibly weight the probable cause determination

in favor of Law Enforcement, resulting in plaintiff's false arrest 6, incarceration. Details

34

EXHIBIT "A"

captured in this courts records related documents: #12, #56, #57 #82, #83, #84. On August 23, 2016, even after it was stamped filed by the Clerk of Court Office, [the warrant bears no file-stamp to prove] it was ever filed in the court records.  As stated in *Hart v. O'Brien*. 127 F. 3d 424, 448 (8th Cir.1997), a government official violates the Fourteenth Amendment when he deliberately or recklessly provide[d] false [and/or stale] material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit.

**[(B)** No reasonable officer would have relied on such information, some stale, some false, some scant and lacking in credibility.  In the scope of his role as either police investigator or district attorney investigator Manceaux, as a state actor[21] under the color of law, conspired with the other co-defendants to accomplish these violations, and each co-defendant conspired and took actions in furtherance to accomplish these constitutional violations and to fabricate a false police report narrative against the plaintiff for the sole purpose depriving him of property and liberty**.**  Upon information and belief these officers acted intentionally.**]**

**[(C**)   The claims above can be summarized enumerated as, but not limited to, the following:

> **i)**   42 U.S.C. §1983 claim for unlawful search and seizure of residence due to a defective warrant (*Frank*);

---

[21] Alternatively, and only if he is not found to have acted in his "official capacity" as a "state actor" "under the color of law" then Plaintiff would request that Manceaux be held personally liable for malicious prosecution or other state law claims as plead, *infra*. These state law claims will be pled in supplemental and amending section "II" based on the facts as pled in these sections.

EXHIBIT "A"

ii)   42 U.S.C. §1983 claim for unlawful seizure and disposal of personal property;

iii)  42 U.S.C. §1983 claim for unlawful seizure of person;

iv)   42 U.S.C. §1985(3) conspiracy to commit unlawful seizure of person and property;

v)    42 U.S.C. §1983 claim for unreasonable force used during search, e.g. S.W.A.T. team and tank;

vi)   42 U.S.C. §1985(3) conspiracy to commit or aid and abet a malicious

and racially discriminatory prosecution.

vii)  42 U.S.C. §1985(3) conspiracy to cover up constitutional violations.]

**[17.**

**Plaintiff's Claims No. (5)** raises violations of the Constitution of the United States of America, Fourth, [Fifth,] and Fourteenth Amendment violations under *Franks vs Delaware* 438 U.S 154, 17 198 S. CT. 2674, 57 C. Ed. 2d 667(19780); and *Hart v. O'Brien* 127 F. 3d 424, 448 (8th Cir.1997) by non-Affiant Sgt. Greg Cormier ("Cormier" or "Sgt. Cormier") as follows:]

**(A)** Upon information and belief, on January 12, through January 14, 2011 Non-Affiant Sgt. Greg Cormier, as a state actor and under the color of law, assisted, conspired with, and aided and abetted Bernard and Parker in the illegal investigation concerning the Plaintiff and Sam's Wholesale Club [] where he was involved in preparing the warrant  and affidavit of arrest for Plaintiff by knowingly and intentionally

EXHIBIT "A"

working as a notary verifying his own investigation of Sam's Wholesale, [doing so without valid documentation, and/or a police officer report, and or any probable cause to substantiate the same[,] [a]n act or omission resulted in Plaintiff's false arrest, incarceration and on August 23,2016, even after requesting to do Plaintiff's Declaration for Emotional Distress caused by the defendant is stamped/filed in this court record that is related to support plaintiff[']s Emotional Injury Claim Details captured in this Court Records Related Documents: #12, #58, #59, #83, #84.

[(**D**)   The claims above can be summarized enumerated as, but not limited to, the following:

        **i)**   42 U.S.C. §1983 claim for unlawful search and seizure of residence due to a defective warrant (Frank);

        **ii)**   42 U.S.C. §1983 claim for unlawful seizure and disposal of personal property;

        **iii)**   42 U.S.C. §1983 claim for unlawful seizure of person, lacking objectively reasonable probable cause;

        **iv)**   42 U.S.C. §1983 claim for unreasonable force used during search, e.g. an, e.g. S.W.A.T. team and tank;

        **v)**   42 U.S.C. §1985(3) conspiracy to commit unlawful seizure of person and property;

        **vi)**   42 U.S.C. §1985(3) conspiracy to commit or aid and abet a malicious and racially discriminatory prosecution.

        **vii)**   42 U.S.C. §1985(3) conspiracy to cover up constitutional violations.]

EXHIBIT "A"

**[18.**

**Plaintiff's Claim[s] No. (6)** raise constitutional violations of the United States Constitution, Fourth and Fourteenth Amendments, for illegal search and seizure against Plaintiff by Detective Jeff Hebert, Officer Bernard, Officer Parker and Officer John Does. The unconstitutional conduct of defendants Detective Jeff Hebert, Office Bernard, Officer Parker, Officer John Doe's [consist of the following acts and omissions taken under the color of law, as state actors], [and as follows]:

**[(A)** Upon information and belief, on January 4, through January 6, 2011, The Lafayette City Police Department's malicious acts were not just limited to damaging Plaintiff Alexander' s residence; their agenda was also thrust upon the Alexander family pets. The family loved and adored their two pets, Black Labrador retrievers named "Thunder" and "Lightning." The Labradors were more than just pets; they were members of the Alexanders' family that had grown alongside their children. The Labradors had been purchased as a gift for Mr. Alexander's young daughters so that they could have companions as they grew up. Upon [information and belief] the Lafayette City Police Department entering the property of Mr. Alexander, the two (2) family dogs were housed securely each in their own kennel. However, the Lafayette City Police Department agent and officer named above made the conscious decision to have the dogs euthanize[d] through the Humane Society. They did this without any regard for the Alexander family. The physically remove the dogs from the property. Friends of the Alexander family made several attempts to take the family dogs into their custody; however, they were prohibited in doing so, when approaching the officers of Lafayette City Police Department. Thus, the Department, its Chief, and its

EXHIBIT "A"

officers unlawfully seized Plaintiff's dogs, which are property under Louisiana State Law,  [but did so in an egregious manner, as if they wanted to inflict the most pain that they could upon Mr. Alexander and his family, serving as proof of malicious intent and retaliation.  Upon information and belief these officers acted intentionally.**]**

(B)    The claims above can be summarized and enumerated as, but not limited to, the following:

**i)**    42 U.S.C. §1983 claim for unlawful seizure and disposal of personal property;

**ii)**    42 U.S.C. §1985(3) conspiracy to commit unlawful, permanent and irreversible seizure of property;**]**


**[19.**

**Plaintiff's Claims No. (7) and (8)** raise claims under the United States Constitutional Fourth and Fourteenth Amendment under the recognized federal malicious prosecution, or unlawful pretrial detention claims, in *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 915 (2017) and *Albright v. Oliver*, 510 U.S. 266, 269–75 (1994), *inter alia* committed by Former District Attorney Mike Harson and Assistant District Attorney Alan P. Haney.

**(A)**    Upon information and belief, on or about January 3, 2011, Assistant District Attorney Alan P. Haney and District Attorney Mike Harson conspired with former Lafayette City Police Jim Craft to have plaintiff Albert K. Alexander arrested and charged with possession of stolen things in retaliation against plaintiff Alexander

EXHIBIT "A"

for the filing on June 17, 2009, of a 42 U.S.C § 1983 claim against Alan P. Haney's colleague William T. Babin and in association with former Lafayette City police chief Jim Craft. In reference to (Albert K. Alexander v. Lafayette Consolidated Government *et al.*; Civil action No.6:09-1016 in this honorable court) "Retaliation can take many forms."

**(B)** Upon information and belief, on and before January 3, 2011, Assistant District Attorney Alan P. Haney had a working office inside the Lafayette City Police Department performing dual jobs, prosecution and City Police Duties which violated the law.  He was assigned to this office by District Attorney Mike Harson, despite the propensity such an arrangement must cloud objective review of evidence for prosecution, permitting the police to exert influence upon the decisions of the District Attorney, and vice versa.[22]

**(C)** Upon information and belief, Assistant District Attorney Alan P. Haney of the 15th Judicial District Attorney's Office, instituted prosecution of Plaintiff for possession  of  stolen property, said prosecution being unlawful as they knew or should have known that the Lafayette City Police agents illegally obtained search warrants, directed at Plaintiff's premises located at 212 1-8 Street, on January 4, 2011thru January 6, 2011. Further, upon information and belief, said office continued the prosecution of Plaintiff based on evidence obtained through these various warrants when said office knew or should have known that evidence and statements derived from the exploitation of an illegal search and seizure must be suppressed

---

[22] *See* https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/.

EXHIBIT "A"

unless the government can show a break in the chain of events to refute the inference that evidence and statements were products of the Fourth Amendment violations.[23]

**[(D)]**   Upon information and belief, Assistant District Attorney Alan P. Haney of the 15th Judicial District Attorney's Office, instituted a malicious prosecution of Plaintiff for the simple battery of Sharlette Alexander ("S. Alexander") and Dashawna Morrison "Morrison"), despite the investigations conducted by Police Officer Jason Eppley and Officer Gustavo Sanchez, wherein said officers reported that there were "suspicious circumstances" surrounding the alleged batteries as when they encountered  S. Alexander  and Morrison on December 28, 2011[and despite the obvious conflict .] S. Alexander stated that after the verbal altercation, Plaintiff had asked them to leave the residence and they wanted the officers' assistance to retrieve their personal items from 212 1-B Street. Neither mentioned, on December 28, 2010, that Plaintiff had physically assaulted either of them and neither, on December 28, 2010 nor December 29, 2010 had any injuries consistent with having been assaulted. Details captured in this Court Records Related Documents: #12, #56, #57, #82, #83, #84.

**[(E)]** Furthermore, Haney, with Harson's approval, failed to disclose *Brady v. Maryland*, 373 U.S. 83 (1963), evidence that was exculpatory.  In facts, Haney on more than one occasion, contacted alleged victims and coerced them to provide any paperwork they could that would aid in prosecution of the claims. Despite this not one shred of evidence showed any of the items taken from Alexander were stolen.

---

[23] *Wong Sun v. UnitedS at t es*,  371 U.S. 471, 487- 488 (1963); *Brown v. Illinois*, 422 U.S. 590, 602- 603 (975).

EXHIBIT "A"

Alexander was either acquitted or the prosecution dismissed all remaining charges, after a delay of almost two years.

**[(F)** Finally, Haney and Harson engaged in both and investigation and a prosecution that had the obvious appearance of impropriety; Harson's office should have recused itself due to formerly being a party to a case which Alexander brought in this court.  Haney and Harson's prosecution violated many of the ABA standards for prosecutors, including lacking independence from police influence due to Haney's office being in the Police Headquarters.  Also, the prosecutors were motivated to convict out of spite for Alexander's prior lawsuit and racial bias and discriminatory animus.

**[(G.)** The claims above can be summarized enumerated as, but not limited to, the following:

**i)**      42 U.S.C. §1983 for improper pre-trial detention and malicious prosecution;

**ii)**      42 U.S.C. §1983 suppression of *Brady* evidence;

**iii)**      42 U.S.C. §1985(3) conspiracy to commit malicious prosecution;

**iv)**      42 U.S.C. §1985(3) conspiracy to cover up constitutional violations;


**The Former Claim No. (9) and (10) against the "press" defendants KLFV-TV 10, et al. have been omitted from this petition and were conceded dismissed.**

**[20.**

**Plaintiff's Claim(s) No. (11)** raise violations of the Constitution of the United States of America Fourth, Fifth and Fourteenth Amendment Violation under 42 U.S.C

EXHIBIT "A"

§§ 1982 and 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) by Clayton Mobile Homes and Manager Travis Knight.

**(A)**      At all times pertinent hereto Travis Knight ("Knight") and Pamela Denam ("Denam") were employed by Clayton Mobile Homes ("Clayton") located in Lafayette, Louisiana.  At all times pertinent hereto Clayton Mobile Homes was liable to Plaintiff for the actions of Knight and Denam who had authority to act for the company and who did act intentionally.

**(B)**      Upon information and belief, on or about January 6, 2011 Travis Knight, in the course and scope of his employment as manager of Clayton, received and allowed employee Pamela Denman to receive personal property belonging to Plaintiff Albert K. Alexander. As a result of Knight's actions, Plaintiff was deprived of personal property without legal justification.  Plaintiff was charged with possession of stolen things of property that belonged to him and plaintiff spent two and a half (2 ½) years in jail, also Plaintiff posted bond awaiting trial after being formally charged by the District Attorney Office and being found not guilty on January 15, 2014. The action by manager Knight was in violation of LSA-C.Cr.P Article 167 wherein property seized pursuant to search warrant shall be retained under the direction of the judge, and if said property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law under the direction of the judge. The Lafayette City Police Department and Clayton Mobile home, Manager Knight, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.  Knight and Clayton

43

knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and Clayton entered Alexander's property as if they were state agents. Details are captured in this court record related documents: #12, #61, #62, #63, #64, #82, #83, #84.

**(C)**	Upon information and belief, at all times pertinent hereto Clayton was also directly liable to Petitioner for failure to train, supervise, equip, discipline Knight.[24]

**(D)**	Upon information and belief, at all times pertinent hereto, Clayton had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

**(E)**	Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs.

**[21.**

**Plaintiff's Claim(s) No. (12)** raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§

---

[24] *See Roberts v. Benoit*, 605 So. 2d 1032, 1038 (La. 1991).

EXHIBIT "A"

1982 and 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) by Van Allen Homes and Manager Sharon Sergi.

(A)    At all times pertinent hereto Sharon Sergi ("Sergi") and Terry Penner ("Penner") were employed by Van Allen Homes ("VAH") located in Lafayette, Louisiana. At all times pertinent VAH was liable to Plaintiff for the actions of Sergi and Penner who had authority to act for the company and who did act intentionally.

(B)    Upon information and belief, on or about January 6, 2011, Manager Sergi herself entered and allowed employee Penner to enter the residence of Plaintiff Albert K. Alexander and received personal property belonging to Plaintiff Albert K. Alexander. As a result of manager Sergi's action plaintiff Albert K. Alexander was charged with possession of stolen things for property that belonged to him and plaintiff spent two and a half (2 ½) years in jail, also Plaintiff posted bond for (Van Allen Homes) awaiting trial after being formally charged by the District Attorney Office and being found not guilty on January 15, 2014. The action by manager Sergi is a violation of LSA-C.Cr.P Article 167 where in property seized pursuant to search warrant shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law under the direction of the judge. The Lafayette City Police Department and, manager Sergi, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.   The Lafayette City Police Department and VAH, Manager Sergi, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by

EXHIBIT "A"

agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.  Sergi and VAH knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and VAH entered Alexander's property as if they were state agents. Details are captured in this court record related documents: #12, #61, #65, #66, #67, #68, #69, #82, #83, #84.

(C)    Upon information and belief, at all times pertinent hereto VAH was also directly liable to Petitioner for failure to train, supervise, equip, discipline Sergi and Tenner.

(D)    Upon information and belief, at all times pertinent hereto, VAH had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.]

(E)    Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs.

**[22.**

46

EXHIBIT "A"

**Plaintiff's Claim(s) No. (13)** raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§ 1982 and 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) by Manager Jason Domingue ("Domingue" and Coburn's Supply "Coburn's").

**(A)**     At all times pertinent hereto Domingue, *et al.*, were employed Coburn's located in Lafayette, Louisiana.  At all times pertinent Coburn's was liable to Plaintiff for the actions of these employees who had authority to act for the company and who did act intentionally.

**(B)**     Upon information and belief, on or about January 6, 2011, Manager Domingue himself and under his supervision allowed employee Meche to fax a hot tub label to Lafayette city police officer Parker to be placed on Plaintiff Alexander's hot tub in a conspiracy with Lafayette City Police Department and Van Allen Homes to violate Plaintiff's Fourth Amendment Right resulting in constitutional injuries and mental suffering. The Lafayette City Police Department and Coburn's through Manager Domingue, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by manufacturing evidence against Alexander.  Coburn's and Domingue knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure and malicious prosecution of the state, to the degree that the Coburn's

EXHIBIT "A"

was an agent of the state acting under the color of law.  Details are captured in this court record related documents: #12, #61, #65, #66, #67, #68, #69, #82, #83, #84.

(C)     Upon information and belief, at all times pertinent hereto Coburn's was also directly liable to Petitioner for failure to train, supervise, equip, and discipline Domingue and Meche.

(D)     Upon information and belief, at all times pertinent hereto, Coburn's had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

(E)     Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs.

[23.

Plaintiff's Claim(s) No. (14) raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§ 1983 and 1985(3) as applied in In re Dennis v. Sparks, 449 U.S. 24, 101 S. CT., 183 and Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) by Home Depot, Inc. ("Home Depot") and Manager Kanisha Youngblood ("Youngblood").

(A)     At all times pertinent hereto Youngblood, et al., were employed by Home located in Lafayette, Louisiana.  At all times pertinent Coburn's was liable to Plaintiff for

EXHIBIT "A"

the actions of these employees who had authority to act for the company and who did act intentionally.

**(B)** Upon information and belief, on or about January 6, 2011, Manager Youngblood, received a call from the Lafayette City Police Department to come to plaintiff Albert K. Alexander's residence and conduct an exploratory search of plaintiff's residence, knowing that she herself had never contacted the Lafayette City Police Department regarding any theft to her store. She willingly entered Plaintiff Alexander's residence and allowed her loss prevention John Doe officers to enter also under her supervision, with no evidence such as surveillance footage of plaintiff or anyone else retrieving items from her store that was involved in a theft, but yet they entered plaintiff Alexander's residence taking items. As a result of Manager Youngblood's action plaintiff Albert K. Alexander was charged with possession of stolen things for property that belonged to him and plaintiff spent two and a half (2 ½) years in jail; before posting bond. Then, the charges were dismissed by Assistant District Attorney Alan P. Haney on November 13, 2015. The action by Manager Youngblood is a violation of LSA C.Cr.P. Article 167 where in property seized pursuant to a search warrant shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law under the direction of the judge. The Lafayette City Police Department and Home Depot, Manager Youngblood, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.  Youngblood and Home Depot knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented

49

and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and Home Depot entered Alexander's property as if they were state agents. Explicit Details is captured in this court record related documents: #12, #61, #74, #75, #82, #83, #84

**(C)**    Upon information and belief, at all times pertinent hereto Home Depot was also directly liable to Petitioner for failure to train, supervise, equip, discipline Youngblood, *et al.*

**(D)**    Upon information and belief, at all times pertinent hereto, Home Depot had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

**[(E)**    Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs.]

**[24.**

**Plaintiff's Claim(s) No. (14)** raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§ 1983

EXHIBIT "A"

and 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) by Lowe's of Louisiana Inc. ("Lowe's") and Manager Brook Frey ("Frey").

   **(A)**   Upon information and belief, on or about January 6, 2011, Manager Frey received a phone call from the Lafayette City Police Department to come to plaintiff Alexander's residence to conduct an exploratory search of plaintiffs residence, knowing that he never contacted the Lafayette City Police Department about any theft to his store; he willingly entered Plaintiff Alexander's residence and also allowed his loss prevention team to enter plaintiff's residence under his supervision. Manager Frey Was given case No. 11-10962 to make it appear as if Mr. Frey had made a previous report of a previous theft with surveillance footage, conspiring with the Lafayette City Police Department, Manager Frey and his loss prevention team then took personal property belonging to plaintiff Alexander and his family while destroying other house hold items in the illegal search. As a result of manager Frey's action plaintiff Alexander was charged with possession of stolen things for property that belonged to him. Plaintiff spent two and a half (2 ½) years in jail before posting bond. Then charges were dismissed by Assistant District Attorney Alan P. Haney on November 13, 2015. The action by Manager Frey is a violation of LSA C.Cr.P. Article 167 where in property seized pursuant to a search warrant shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law under the direction of the judge.   The Lafayette City Police Department and Lowe's, and Manager Frey, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff

51

EXHIBIT "A"

without having an open investigation for those stolen items.  Frey and Lowe's knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and Lowe's entered Alexander's property as if they were state agents resulting in mental injury and the loss of other property belonging to plaintiff. Details are captured in this court record related documents: #12, #61, #72, #73, #82, #83, #84

**(B)**     Upon information and belief, Lowe's was directly liable to plaintiff for the acts of its employees who had authority to act for the company and who did act intentionally.

**(C)**     Upon information and belief, at all times pertinent hereto, Lowe's had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

**(D)**     Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs. ]

**[25.**

EXHIBIT "A"

**Plaintiff's Claim(s) No. (16)** raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§ 1983 and 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) by Fred's Inc. ("Fred's) and Manager Haskim Smith ("Smith").

**(A)**      Upon information and belief, On or about January 11, 2011, the Lafayette City Police officers in desperation to come up with a solution to illegally enter plaintiff Albert K. Alexander's residence with an illegal search warrant for weapons, they seized Christmas Gift items from plaintiff Alexander's residence with the assumption of making it look like they were stolen; calling several store merchants in and out of the Lafayette area. They were able to target another store Manager Smith of Fred's Discount Store and asked if they carry a certain brand of items that was taken from Plaintiff's residence specifically a Craig Surround Sound where manager  Smith, "replied that the item mentioned was exclusively sold at Fred's Discount Store" among other items belonging to Plaintiff. Manager Smith agreed to take those items out of the hands of the Lafayette City Police Department making it appear as if he himself had called the police and reported the items taken from Plaintiff's residence were taken from his store. As a result of Manager Smith's action plaintiff Albert K. Alexander was charged with possession of stolen things for property that belonged to him and plaintiff spent two and a half (2 ½) years in jail; before posting bond for (Fred's Discount Store) awaiting trial being formally charged by the District Attorney Office. Then charges were dismissed by Assistant District Attorney Alan P. Haney on November 13, 2015, the action by Manager Haskim Smith is a violation of LSA C.Cr.P. Article 167 where in property seized pursuant to a search

EXHIBIT "A"

warrant shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law under the direction of the judge. The Lafayette City Police Department and Fred's, and Manager Smith, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.  Smith and Fred's knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and Fred's entered Alexander's property as if they were state agents resulting in mental injury, constitutional injury and the loss of other property belonging to plaintiff. Details are captured in this court record related documents: #12, #61, #72, #73, #82, #83, #84

**(B)**     Upon information and belief, at all times pertinent hereto Fred's was directly liable for its employees actions, who had supervisory authority to act on behalf of the company and who did act intentionally

**(C)**     Upon information and belief, at all times pertinent hereto, Fred's had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

**(D)**     Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an

EXHIBIT "A"

assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs. ]

**[26.**

Plaintiff's Claim(s) No. (17) raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§ 1983, 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and under theories of malicious prosecution by Sam's Club ("Sam's") and Manager Sandy Mixon ("Mixon"), as follows:

**(A)**    Upon information and belief, on or about January 12, 2011, store Manager Sandy Mixon received a phone call from the Lafayette City Police Department involving an alleged theft of his store for which Sam' s Club had never reported. Lafayette City Police officers then took several items belonging to plaintiff Albert K. Alexander and brought them to Sam' s []; where Manager Sandy Mixon agreed to involve his store by illegally accepting plaintiff Alexanders property from police officers knowing that there was no report made nor was there any surveillance footage of any theft of his store involving plaintiff Alexander's property a surveillance camera and other items that was released to Sandy Mixon. In a desperate move made by the Lafayette City Police Officers to have plaintiff Alexander charged with possession of stolen property with no date of any theft occurring at Sam's Club. Manager Sandy Mixon agreed in conspiracy to help police officers cover up the fact that they (the Police Officers) falsified documents to illegally enter into plaintiff's residence for firearms taking surveillance monitor and one (1) camera

EXHIBIT "A"

that was inside plaintiff Alexander's residence, that could have proven all the illegal activities being done inside plaintiff[] Alexander's residence when being searched. As a result of manager Sandy Mixon's action plaintiff Albert K. Alexander was charged with possession of stolen things for property that belonged to him and plaintiff spent two and a half (2 ½) years in jail before posting bond for (Sam's Club Wholesale) awaiting trial being formally charged by the District Attorney Office. Then charges were dismissed by Assistant District Attorney Alan P. Haney on November 13, 2015, the action by Manager Sandy Mixon is a violation of LSA-C.Cr.P. Article 167 where in property seized pursuant to a search warrant shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law under the direction of the judge. The Lafayette City Police Department and Sam's, and Manager Mixon, conspired to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.  Mixon and Sam's knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and Sam's entered Alexander's property as if they were state agents resulting in mental injury, constitutional injury and the loss of other property belonging to plaintiff. Details are captured in this court record related documents: #12, #61, #80, #81, #82, #83, #84

EXHIBIT "A"

**(B)**      Upon information and belief, Sam's was directly liable to plaintiff for the acts of its employees who had authority to act for the company and who did act intentionally.

**(C)**      Upon information and belief, at all times pertinent hereto, Sam's had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

**(D)**      Upon information and belief, at all times pertinent hereto, the store above and its employees and agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of an assumption, due to his house being un-renovated from the storm damaged, that he was of too low a socio-economic status to afford these goods, having no articulable facts, probable cause, or reasonable suspicion upon which to base these beliefs.]

**[27.**

**Plaintiff's Claim(s) No. (18)** raise violations of the Constitution of the United States of America, Fourth, Fifth and Fourteenth Amendments under 42 U.S.C §§ 1983 and 1985(3) as applied in *In re Dennis v. Sparks*, 449 U.S. 24, 101 S. CT., 183 and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and for malicious prosecution and false imprisonment by Walmart, Inc., including the following Walmart locations and employees:   Lafayette, Wal-Mart Store# 2938 Manager Carol Mitchell; and Opelousas, Wal-Mart Store #543 Loss Prevention Personnel Leon Vedrienne, as follows:

**(A)**      Upon information and belief, on or about January 14, 2011 Manager Carol Mitchell received a phone call from officers from the Lafayette City Police Department to come to plaintiff's residence and or the Lafayette City Police Station where Manager Carol

57

EXHIBIT "A"

Mitchell with no police report made or surveillance footage of a theft of his store and with no warrant to seize any items belonging to Lafayette Walmart store; Manager Carol Mitchell illegally took fifty-two (52) Blu Ray DVD's and two (2) Sony Blu Ray DVD players from plaintiff Alexander's residence after receiving a phone call from Lafayette City Police Officers who needed to obscure the illegal entry of plaintiff Albert K. Alexander's residence. Although, Plaintiff was not charged with any crime pertaining to Lafayette Wal-Mart, however the police report reflects a crime being committed of theft at the Lafayette Wal-Mart that influenced the amount in which Plaintiff legally had to post bond related to the above retail stores after serving two and a half (2 ½) years in jail. A violation of LSA C.Cr.P. Article 167, where in property seized pursuant to a search warrant (which they never had) shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law, under the direction of the judge.

(B)      Upon information and belief, on or about January 14, 2011, Lafayette City Police Officers made several calls to all the Wal-Mart stores in the Acadiana Area where Lafayette City Police Officers were able to influence Opelousas Wal-Mart Loss Prevention officer Leon Vedrienne to illegally take possession of plaintiff Albert K. Alexander children's toys with no report of any theft of the toy items or surveillance footage of the toy items being taken from the Opelousas Wal-Mart store and with no warrant to seize the items taken from Plaintiff Alexander's residence. Although, plaintiff's children's Little Tykes swimming pool, fun jump, and slip-n-slide was used and put back in its original boxes Wal-Mart Opelousas loss prevention officer Leon Vedrienne accepted plaintiff Albert K. Alexander children's items listed above from the Lafayette City Police and resold

58

EXHIBIT "A"

them as if they were brand new at their Wal-Mart (Opelousas) store. Also, Plaintiff was not charged with any crime pertaining to Opelousas Wal-Mart, however the police report reflects a crime being committed of a theft at the Opelousas Wal-Mart that influenced the amount in which Plaintiff legally had to post bond related to the above retail stores after serving two and a half (2 ½) years in jail. A violation of LSA C.Cr.P. Article 167, where in property seized pursuant to a search warrant (which they never had) shall be retained under the direction of the judge and if said property is not to be used as evidence or is no longer needed as evidence it shall be disposed of according to law, under the direction of the judge.

(C)     The Lafayette City Police Department, Walmart, and its employees named above, all violated and did conspire to violate Plaintiff Alexander's Fourth, Fifth, and Fourteenth Amendment rights by agreeing to take items illegally seized from the house of Plaintiff without having an open investigation for those stolen items.  Walmart and its employees knew or should have known that Plaintiff had not stolen the items in question and that the Police tactics were egregious, unprecedented and unconstitutional, resulting in mental injury and the loss of other property belonging to Plaintiff.  These actions were so closely related to the actions of the state as to be indistinguishable from the unlawful search and seizure of the state, to the degree that the employees and Walmart entered Alexander's property as if they were state agents resulting in mental injury, constitutional injury and the loss of other property belonging to plaintiff. Details captured in this court records related documents: For Lafayette, #12, #76, #77, #82, #83, #84#12, #78, #79, #82, #83, #84; for Opelousas, #12, #78, #79, #82, #83.

EXHIBIT "A"

**(D)**     Upon information and belief, Walmart was directly liable to plaintiff for the acts of its employees who had authority to act for the company and who did act intentionally.

**(E)**     Upon information and belief, at all times pertinent hereto, Walmart had in effect a policy of insurance providing coverage for the acts and omissions of its employees and managers as described above.

**(F)**     Upon information and belief, at all times pertinent hereto, the store above and its employees and Agents had discriminatory animus, believing that the goods in Mr. Alexander's house must be stolen because he was African American and because of his socio-economic status.**]**

**[28.**

**Plaintiff's Claim(s) No. (19)** raise violations of the Constitution of the United States of America, Fourth, under 42 U.S.C §§ 1983, 1985(3) as applied in and under theories of false arrest malicious prosecution by all defendants above, as follows:

**(A)**     Upon information and belief, on or about January 7, 2011, Plaintiff Albert K. Alexander, asserts that because of the wrongful act by all the defendants here in that caused Plaintiff to suffer greatly, mentally, physically, emotionally, and financially, but most importantly when my (Plaintiff) Liberty was taken away from me.  My friends and family discarded me because of all the negative publicity that surrounded me at the time of my arrest, which caused me (Plaintiff) to spend two and a half (2 ½) years incarcerated. When on February 9, 2013, I was bonded out of jail by a family member Tracey Shelvin and as a result of freeing me from my incarceration, caused damaged to her; a third party that all the defendants should be held liable to Tracey Shelvin for the result of my

EXHIBIT "A"

unconstitutional arrest and incarceration that formed the basis for plaintiff's bond to be posted for my release.

**(B)**      Upon information and belief, on or about January 7, 2011 plaintiff Albert K. Alexander, asserts that due to his unconstitutional arrest and incarceration it was noted in jail that plaintiff suffered emotionally from Major Depression and had to undergo medical treatment as a result of all defendants['] wrongful act**.**

**(C)**      Upon information and belief, on or before February 9, 2013, Plaintiff Albert K. Alexander asserts, that where after Third Party family member Tracey Shelvin posted Plaintiff Alexander's bond for his release from his unconstitutional arrest and incarceration plaintiff Alexander had to seek further mental medical treatment from Tyler Behavior Health clinic where plaintiff Alexander was diagnosed by Dr. Patricia Ambrose with Major Depression, Post traumatic stress, and sleep disorder as a result of the unconstitutional act of the defendant 's which lead to plaintiff's unconstitutional arrest and incarceration.

**(D)**      Upon information and belief, on or about August 19, 2016, Plaintiff Albert K. Alexander asserts that where after being diagnosed by Dr. Patricia Ambrose with Major Depression, Post Traumatic stress and sleep disorder; he was granted on the above date Full disability by Administrative Law Judge Decision was stamped filed in this court. However, the above Declaration is not reflected as being filed in this case civil docket sheet that would support plaintiff's claims. In said pleading the Administrative Law Judge ruled that Plaintiff's Emotional Distress was solely caused by the unwarranted actions and behaviors of Defendants in this matter, through their violation of his Fourth Amendment rights in bringing about or conspiring to bring about an unlawful pre-trial detention that

EXHIBIT "A"

lasted over a year of his life, and by depriving him of most of his own possessions and family mementos, with discriminatory animus.

**(E)**      These intentional and discriminatory unconstitutional acts, performed under the color of state law, as described above, involved the state actors enlisting the aid of the managers and lost prevention employees of those several stores named as defendants above.  These private actors acted under government compulsion and for the interest of the government. Inasmuch as they aided the police and prosecution, served the public function of investigation of alleged or fabricated crimes and malicious prosecution of the same, their interest was so entwined with the public actors as to become indistinguishable.**]**

## **[29.**

For each merchant above, because the procedure for investigating thefts was effectively applied in reverse, with the municipal police calling the merchants, the merchants knew or should have known from this highly unusual and suspicious circumstance that the police action was unlawful and abusive of Alexander's rights, as the merchants had not even reported a theft.  Also, obviously, the holding and gathering of evidence is typically the function of the state, as statute and policy require chains of evidence.[25]  However, police delegated this "securing" of evidence to the merchants who converted Alexander's property.  The actions of the merchants in this case satisfies either the "symbiosis," "state compulsion," the "nexus test," and/or the "joint participation test,"[26]

---

[25] …which anyone knows from watching television series police procedurals.

[26] *See Adickes v S.H. Kress & Co.*, 398 US 144, 152 (1970); *Blum v Yaretsky*, 457 US 991, 1005 (1982) (emphasis added), *citing Jackson v Metropolitan Edison Co.*, 419 US 345, 353 (1974). *See also Marsh v Alabama*, 326 US 501 (1946); *Burton v Wilmington Parking Authority*, 365 US 715 (1961) (finding state action under the symbiosis test); *see also Lugar v Edmondson Oil Co., Inc.*, 457 US 922 (1982).

EXHIBIT "A"

because the merchants worked so closely with state actors as to be indistinguishable from the actors of the state in seizing and holding, and then dispersing, evidence.  The merchants actually completed the initial unlawful seizure action started by the municipality, by taking and dispersing the seized property, and—for the benefit of the municipal actors—this neatly disposed of evidence that could have been used to prove Alexander's innocence at trial and the state's guilt herein.  Plaintiff requests that the municipality be held to account for the spoliation of this evidence and any adverse presumptions that flow from destruction or disbursement of his property.

## [II.

## OTHER CLAIMS

### 30.

NOW INTO Court comes the Plaintiff, through undersigned counsel, who raises, in this section, claims that either (1) have been repositioned here because they are cognizable ***state law claims***  (whereas the claims listed above are all 42 U.S.C.A. § 1983 and § 1985 claims).  These claims attach through pendant jurisdiction (28 U.S.C.A. § 1367); or (2) they are additional state law claims, or constitutional claims that are being raised here in the first instance by Plaintiff's Counsel through amending and supplementing the original petition, as follows:

### 31.

Plaintiff brings an additional Federal Claim under 42 U.S.C. §§ 1983 and 1985, as follows:

**Plaintiff's Claim(s) No. (20)** raise violations of the Constitution of the United States of America, Fifth and Fourteenth Amendments, under 42 U.S.C §§ 1982, 1985(3)

EXHIBIT "A"

as applied in and under theories of false arrest malicious prosecution by all defendants above, as follows:

(A) Each and every defendant, in the particulars of the violations detailed above did violate Alexander's Equal Protection rights as Alexander was assumed guilty due to his race and socio-economic status. The above defendants, without reservation, brought these false charges, not generated from their own investigations, but concocted *post factum*, at the invitation of police. The charges led Alexander to be held for, what was for him, and for all intents and purposes, no bond, that he sat incarcerated for over a year prior to his trial.

**(B)** Thus, for each act or omission detailed for each defendant, *supra*, said act also did deprive Alexander of his right to due process as a criminal defendant in violation of the equal protection clause. Because of Mr. Alexander's race and socio-economic status, he was assumed guilty, and the public and private defendants worked in concert and symbiotically to assure his conviction by fabricating evidence of crimes after the fact.

**(C)** Defendants unlawfully seized Plaintiff's property with a discriminatory animus, believing, "the items in Alexander's possession must be stolen because they were new and because the defendant was African American." Law enforcement officials, because their investigation did not produce the firearm they were looking for as per the warrant application, fabricated charges based on nefarious and discriminatory intent. The public store employees acted symbiotically with the state employees by fabricating theft charges to attach to the items, *post factum.* Thus, these public parties, with supervisory authority, either violated Plaintiff's rights to equal protection as a criminal defendant to the

64

EXHIBIT "A"

presumption of innocence, or they conspired to do the same with the police and district attorney.

**32.**

**Plaintiff's Claim(s) No. 21** raise violations of the Constitution of the State of Louisiana, as follows:

For each public official or private actor, as detailed in the facts provided above, these acts that were the basis of federal constitutional claims that violated the Fourth and Fourteenth Amendments, as alleged above, also violated the Louisiana Constitution of 1974 in the following ways:

(A)      Lafayette City Police Department, Craft, Bernard, and Parker, and District Attorney Harson and Assistant District Attorney Haney, *et al.*, through obtaining the warrant, supplying falsehoods and false swearing, search and seizure of person and of property, and through any other act or omission detailed above, intentionally, maliciously and nefariously, violated the following state constitutional provisions:

(i)      LA CONST Art. 1, § 3 and LA CONST Art. 1, § 12, by discriminating against Alexander in the judicial system based on his race when they assumed his guilt and seized his person and property;

(ii)     LA CONST Art. 1, § 2 and LA CONST Art. 1, § 5, by depriving Alexander of property and freedom without allowing for due process of law;

(B)      For each public defendant named above, they conspired, attempted, and or aided and abetted the above violations of the Louisiana Constitution of 1974.

**33.**

EXHIBIT "A"

**Plaintiff's Claim(s) No. 21** raises claims for the recognized state law tort of abuse of process tort of abuse of process. Abuse of process is a cause of action originating from the common law and recognized under our jurisprudence as a compensable tort under LSA–C.C. art. 2315.[27]

**(A)** In *Stark v. Eunice Superette, Inc.*, 457 So.2d 291, 295 (La.App. 3d Cir.1984) the court noted the two essential elements of abuse of process are: (1) an ulterior purpose and (2) a willful act in the use of the process not proper in regular conduct of the proceeding. As detailed above each public defendant and private defendants each sought to deprive plaintiff of his lawful property, outside of the scope of LSA-C.Cr.P. 167, by seizing and distributing his property and refusing to keep it as evidence.

**(B)** Similarly, each public defendant, Lafayette City Police Department, Craft, Bernard, and Parker, and District Attorney Harson and Assistant District Attorney Haney, et al., willfully fabricated justification for the search and seizure of Alexander's house with the purpose of incarcerating him.

### 34.

**Plaintiff's Claim(s) No. 22** raises claims for the tort of conversion under Louisiana state law pursuant to LSA-C.C. arts. 511, 515, 521, 524, 526, and 2315. Plaintiff, as a citizen of Louisiana, enjoys the right of ownership, possession, and enjoyment of movables and is protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages. For each unlawful seizure detailed above, including for each and every item seized, as listed,

---

[27] Mini–Togs, Inc. v. Young, 354 So.2d 1389 (La.App. 2d Cir.1978);

EXHIBIT "A"

*supra and infra*, the theft of these items amounts to conversion.  Defendants seized these items and instead of following the mandates of LSA-C.Cr.P. 167, disposed of the property in a manner that showed intent to permanently and maliciously deprive Plaintiff permanently of these items.

**35.**

**Plaintiff's Claim(s) No. 23** raises claims under Louisiana State Law for malicious prosecution (*see Johnson v. Pearce*, 313 So.2d 812, 816 (La.1975): each public defendant, Lafayette City Police Department, Craft, Bernard, and Parker, and District Attorney Harson and Assistant District Attorney Haney, *et al.*, intended to prosecute Plaintiff without probable cause, for the malicious purpose of retaliation and revenge for his prior civil suit. Plaintiff suffered damages of losing his property and losing his freedom for over a year as he awaited trial.

**36.**

**Plaintiff's Claim(s) No. 24** raises claims for torts of intentional inflection of emotional distress, conversion, and destruction of property under state law, as follows:[28]

**(A)**    Upon information and belief, on or about January 4, 2011, the Lafayette City Police Officers, individual and official capacity at the time of the unconstitutional search and seizure, seized plaintiff Albert K. Alexander's children's black Labrador retriever dogs, who were both inside of their own kettle, having their own "house" and space in the rear of the second back house on the residence located at 212 1-B Street

---

[28] This claim was originally listed as part of Claim No. 7.

EXHIBIT "A"

Lafayette, Louisiana, not described in the search warrant. The officers took the two dogs into custody through the Lafayette Humane Society. The Lafayette City Police committed a "tort" that caused emotional distress on the Plaintiffs Children, plaintiff's children's mothers, and plaintiff himself for the loss of the two-family pets and amounted to intentional infliction of emotional distress.[29]

**(C)** Upon information and belief, on or about January 4, 2011, Plaintiff Albert K. Alexander's family members arrived at the residence located at 212 1-8 Street Lafayette, LA to care for plaintiff's two children's black Labrador retrievers "Thunder" and "Lightning," where detective Jeff Hebert and officer Kristina rudely turned them away.

**(D)** Upon information and belief, on or about January 4, 2011, Plaintiff Albert K. Alexander's family member once again arrived at the residence located at 212 1-B Street Lafayette, LA to care for plaintiffs children's black Labrador retrievers "Thunder'" and "Lightning," Detective Jeff Hebert, Officer Kristina Bernard, and Officer Calvin Parker once again rudely turned them away as if the plaintiff family members were trying to retrieve something else from the home besides caring for the dogs.

**(E)** Upon information and belief, on or about January 7, 2011, Plaintiff Alexander's longtime friend and family members again arrived at the residence located at 212 1-B Street Lafayette, LA 70501 to care for plaintiffs two children's black Labrador retrievers "Thunder'" and "Lightning," where Detective Jeff Hebert, Officer Kristina Bernard, Officer Calvin Parker, and Officer John Does asked plaintiff

---

[29] *See* Section "II" below.

EXHIBIT "A"

Alexander's longtime friend to open the trunk of their car to be searched for unknown reasons; Then they were rudely told to leave. Details capture in this court Records Related Documents: #12, #23, #25, #82, #83, #84, #85, #86, #87, #88.

(F)     Furthermore, the defendant attempted to inflict emotional distress by maliciously searching and sezing his property by use of excessive force (a tank and a SWAT team) incarcerating Plaintiff prior to his trial.

**37.**

(A)  **Plaintiff's Claim(s) No. 25** alleges that if, for any claim above, either the private or public defendant is discovered to have acted in a merely negligent manner, instead of with intent, then the negligent party would have violated their duty to honestly and diligently report incidents causing damage to Plaintiff.  Thus, these negligent defendants would still be liable under LSA-C.C. art. 2315 and 2316, for the damages they caused.

(B)  **Plaintiff's Claim(s) No. 26:** For any employer of a private entity above (e.g. Home Depot, Lowe's, Coburn's Walmart, etc.) should the employee or supervisor be liable for acts or omissions taken to deprive Plaintiff of person or property under LSA-C.C. art 2315 and 2316, then the employer would be liable under the theory of vicarious liability or *respondeat superior*.

(C)  **Plaintiff's Claim(s) No. 27**: For any employer of a private entity above (e.g. Home Depot, Lowe's, Coburn's ,Walmart, *inter alia*.) should tort liability attach under LSA-C.C. art. 2315; then the employer would also be liable to Plaintiff under a theory of direct negligence for failure to train their employees in proper investigation

EXHIBIT "A"

and loss prevention techniques, and for negligent supervision, training, equipping, or hiring. *See Roberts v. Benoit*,

**38.**

(C)   **Plaintiff's Claim(s) No. 28** alleges the state law tort of false imprisonment under against Craft, *et al.*,  as he was detained against his will for over a year without probable cause, *see Hughes v. Gulf International*, 593 So.2d 776, 780 **(La.App. 4 Cir.1992).**

**39.**

Finally, **Plaintiff's Claim(s) No. 28** he alleges that, for unlawful seizure of his property, without any return of the property or the equivalent value thereof, the defendants have been unjustly enriched at his expense.

**40.**

Plaintiff pleads that the defendants should be apportioned fault according to their share as per LSA-C.C. 2323. Plaintiff pleads that, where applicable, the defendant masters should be vicariously liable for their servants.

**Plaintiff amends and supplements the remainder of Alexander's petition as Section III, as follows:**

**III.**

**Jury Demand**

**41.**

Plaintiff Albert K. Alexander, humbly request a public trial by jury on each claim above that is triable by such means.

**Judicial Demand**

70

EXHIBIT "A"

**42.**

The aforementioned acts and omissions, engages by the Lafayette City Police, under color of State Authority was carried out by the Lafayette City Police and all other Defendants in this matter in global and are responsible under *Monell, Harris*, and *Adickes*; *inter alia et supra*, depriving Plaintiff of his rights secured to him by the Constitution of United States, including but not limited to his Fourth Amendment Right where Plaintiff should not be deprived of his life, liberty, and/or property without due process of law, [] and Fourteenth Amendment Right where Plaintiff should not have been denied equal protection of the Law. As a direct and proximate result of the aforesaid acts.

**[43.]**

Defendants whose conduct was motivated by evil motives intent or involved reckless or callous [and deliberate] indifferences to Plaintiff's federally protected rights. Plaintiff allege[s] the [following] defendants are all directly, officially, and/or vicariously liable for damages as sued for herein:

1.   Lafayette City Police Department
2.   Lafayette Consolidated Government
3.   Clayton Mobile Homes
4.   Van Allen Home
5.   Coburn's
6.   Fred's Discount Store
7.   Lowes Home Improvement
8.   Home Depot
9.   Wal-Mart (Lafayette)
10.   Wal-Mart (Opelousas)

EXHIBIT "A"

11.     Sam's Wholesale (Club)

**[44.]**

Moreover, Plaintiff Albert K. Alexander suffer from depression and other medical
issues due to the actions of the above defendants. As of this day September 19, 2018, it
has been seven (7) dreadful years where damages are warranted; this litigation is causing
Plaintiff to relive the September 19, 2011, wrongful act of the defendants in this suit.
Plaintiff Alexander is forced to live at his residence 212 1-B Street in poor living conditions,
because he is still trying to get the basic necessities needed to survive due to the above
defendant['s] taking everything from him. Plaintiff Alexander was stopped from completing
repairs to his home when he was falsely arrested and had all his tools and supplies
needed to complete his home taken away. FEMA provided Plaintiff Alexander with funds
to complete his home and everything Plaintiff purchased with FEMA funds was taken,
leaving Plaintiff more depressed and stressed; worrying that FEMA will come back on him
for misuse of funds. Plaintiff is trying to put his life back together, but it is hard when you
have to start all over again. Plaintiff has three (3) minor children who depend on him and
it is very hard to think about their health, wealth, and education. Plaintiff Alexander is still
trying to deal with is life that was [] torn into pieces by the above defendants and yet still
worrying about how he can pay for his children's college to further their education. Details
captured in this courts records related documents: #12, #60. Although, Plaintiff's mental
and emotional injury that was caused by the above defendants, was determined to be a
permanent disability decided by Administrative Law Judge Glynn F. Voison; that particular
related document decision of Administrative Law Judge Glynn F. Voison was stamped
and filed on August 23, 2016, in this clerk of court office. However, it is not reflected as

72

EXHIBIT "A"

being filed in this court records. Whereby, Plaintiff Alexander cannot provide a related record document number in support of his claim. However, Plaintiff can resubmit for evidence if needed.

**[45.]**

**COMPENSABLE CLAIMS AND DAMAGES**

Plaintiff has suffered the following damages:

**(A)**   Severe mental and emotional distress; permanent mental and emotional scarring;

**(B)**   Inconvenience and interruption and loss of lifestyle;

**(C)**   Past, present, and future medical special damages,] and emotional distress;

**(D)**   Loss of personal belongings including but not limited to clothes, shoes, cologne, jewelry; including watches, rings, chains, etc.;

**(E)**   Loss of two (2) family pet Labrador retrievers; Names "Thunder" and "Lightning;"

**(F)**   Loss of household appliances including, but not limited to a refrigerator, a small refrigerator, personal cabinet space refrigerator, two (2) microwaves, toaster oven, coffee maker, blender, George Foreman grill, rice cooker, crock pot, deep fryer, electric can opener, kitchen appliances, etc.;

**(G)**   loss of personal safe with $2,500.00 contents in it;

EXHIBIT "A"

**(H)**   loss of a limited-edition collector's series coin collection of 10 grand casino
.999 fine silver coins. 8 coins are missing out of the collection which
leaves me with 2 loose coins;

**(I)**   loss of personal construction material including, but not limited to nail gun,
staples, staple gun, screws, electric screwdriver, lumber, plywood,
sheetrock, paneling, bags of concret e, etc.

**(J)**   Loss of inside furniture including, but not limited two (2) complete sofa sets;
including sofa and love seat, recliner, end tables and lamps, two (2)
complete queen sized bedroom sets; including mattresses, rails,
headboard, dressers, mirrors, night tables and lamps, kitchen table, four (4)
chairs, four (4) bar stools, computer, computer desk and chairs, floor spider
lamp, wall pictures and artwork, two (2) lap-top computers four (4) flat-
screen T.V.'s, Samsung surveillance system, etc.;

**(K)**   loss of tools including but not limited to a hammer, pliers , screwdrivers,
electric chainsaw, lawnmowers, electric and gas blowers, electric and gas
weed-eaters, etc.;

**(L)**   loss of children's belongings including, but not limited to clothes, shoes,
toys, jewelry, including watches, rings, chains, etc.;

**(M)**   loss of belongings pertaining to pet care, including; dog houses, blankets,
toys, food, etc.;

EXHIBIT "A"

**(N)**   loss of household materials including, but not limited to pots and pans, dishes, cleaning supplies, mops, brooms, buckets, dust pans, vacuum cleaners, etc.;

**(0)**   Loss of outside yard furniture and appliances including but not limited to, a complete patio set with: umbrella, table and four (4) chairs, outside concrete benches, two (2) hoses with hose holders, two (2) BBQ pits, etc.;

**(P)**   Loss of job opportunities due to arrest and charges associates with nine (9) counts of stolen property;

**(Q)**   Loss of all property items which were seized by Lafayette City Police Department that belonged to the plaintiff; including the other forty items that are still as of this day in the evidence storage unit at the Lafayette City Police Department;

**(R)**   Loss of wages taken while working in work release while being incarcerated on charges associated with the nine (9) counts of possession of stolen property;

**(S)**   All attorney's fees, expenses and costs expenses incurred pursuant to 42 U.S.C. 1983 and 1988.

### [46.]

WHEREFORE, Plaintiff Albert K. Alexander, prays the following demands that all relief be jointly and severally against all the Defendants, together with legal interest

EXHIBIT "A"

thereon from the date the complaint was filed (September 19, 2011) until the end of the judicial demand, with all court costs as demand follows:

    **(A)**    Compensatory damages in the amount of $115,000,000.00, one hundred fifteen million U.S.D.;

    **(B)**    Special damages in the amount of $125,000,000.00, one hundred twenty-five million U.S.D.    ;

    **(C)**    Punitive damages in the amount of $175,000,000.00, one hundred seventy -five million U.S.D.;[30]

    **(D)**    Nominal damages in the amount of $175,000,000.00, one hundred seventy-five million U.S.D.; *Baltezore v. Concordia Parish Sherriff's Dep't* 767 F. 2d 202, 108 n.6 (5th Cir).

**[47.]**

Further, with all other relief as [this Honorable Court] may deem appropriate under the circumstances; Furthermore, Plaintiff Albert K. Alexander , prays that the defendants be duly cited and required to appear and answer to the Plaintiff's complaint, and hereby demands a trial by jury on all issues so triable herein for an award of compensatory, special, punitive, and nominal damages all in an amount to be determined by a jury .

---

[30] It is settled that punitive damages may be awarded in a section 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated. *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir.1980); *accord Dykes v. Hosemann*, 743 F.2d 1488, 1500 (11th Cir.1984); *see also Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 1639 n. 21, 75 L.Ed.2d 632 (1983) (*quoting Carlson v. Green*, 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468, 1473 n. 9, 64 L.Ed.2d 15 (1980) ("punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury")). Here the plaintiff can at least prove a compensable injury due to the seizure and distribution of the items he would use to renovate and refurnish his house.

EXHIBIT "A"

**48.**

WHEREFORE Plaintiff prays his complaint be amended with this, Plaintiff's Third Amended Complaint and that it be deemed good and sufficient, and be filed *nunc pro tunc*,[31] retroactive to the date of filing the original petition.

RESPECTFULLY SUBMITTED:

 /s/ BRUCE BETZER
Bruce C. Betzer, Bar No.: 26800
The Law Office of Bruce C. Betzer
A Professional Limited Liability Company
3129 Bore Street
Metairie, Louisiana 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
*Attorney for Albert K. Alexander*[32]

---

[31] According to Fed. R. Civ. Pro., Rule 15(c).
[32] Who also appears *pro se* for the purpose of the incorporated prior pleadings.

EXHIBIT "A"