## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **ALBERT K ALEXANDER** | **CASE NO.  6:11-CV-01749** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CITY POLICE OF LAFAYETTE ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

The present matters before the Court are four motions to dismiss: (1) the Motion to Dismiss for Failure to State a Claim filed by defendants Christina Bernard Strong, Craig Cormier, James Craft, Jeff Hebert, Lafayette City-Parish Consolidated Government ("LCG"), Kyle Manceaux, Jarvis Mayfield, and Calvin Parker;[1] (2) the Motion to Dismiss for Failure to State a Claim filed by defendant Dwayne Arceneaux;[2]  (3) the Motion to Dismiss Penalty, Punitive, or Exemplary Damages filed by defendants Strong, Cormier, Craft, Hebert, Manceaux, Mayfield, Parker, and LCG;[3] and (4) the Motion To Dismiss Penalty, Punitive, or Exemplary Damages filed by defendant Arceneaux.[4] The Court will refer to all of the defendants joining in these motions as the "Moving Defendants" or simply "Defendants." The Court will refer to defendants Strong, Cormier, Craft, Hebert, Manceaux, Mayfield, Arceneaux, and Parker as the "Individual Defendants." For the reasons explained below, the Court GRANTS the Motions in part, and DENIES the Motions in part.

---

[1] ECF No. 162.
[2] ECF No. 167.
[3] ECF No. 159.
[4] ECF No. 168.

# I.
## BACKGROUND

Plaintiff Albert Alexander filed the present section 1983 action against a wide array of defendants and alleges illegal searches and seizures arising out of three incidents involving the Lafayette Police Department in January 2011. Alexander alleges conspiracy by the Lafayette Police Department and the Individual Defendants to retaliate against him for filing an earlier civil rights lawsuit against the department.

Alexander alleges that, on December 29, 2010, the Lafayette Police Department received a call regarding a disturbance at Alexander's residence.[5] The responding officers encountered two females who informed them that, on December 28, 2010, they were involved in a verbal and physical altercation with Alexander.[6] On January 2, 2011, Officer Calvin Parker was contacted by Officer Jarvis Mayfield about an allegation by Alexander's son, Todd Alexander.[7] Todd Alexander alleged that Alexander threatened to kill Todd's one-year old daughter during a December 31, 2010, telephone conversation.[8] Officer Parker also reported an anonymous tip from a family member that Alexander was a convicted felon in possession of a firearm and that there were items of stolen property located throughout his residence.[9] Officer Kristina Strong interviewed the two females that were involved in the alleged altercation with Alexander, and these interviews corroborated the anonymous tip that Alexander possessed stolen property and a "brown and black shotgun" in his residence.[10]

---

[5] Amended Complaint, ECF No. 109, at 3.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 3-4
[9] *Id.* at 4
[10] *Id.*

Defendants Strong and Parker, with the assistance of defendant Kyle Manceaux, obtained a search warrant for Alexander's residence based on this information.[11] This first search warrant was executed on January 4, 2011, by the Lafayette City Police SWAT Team and members of the City Police Crime Suppression Unit.[12] Alexander alleges that the items listed in the search warrant—firearms and ammunition—were not found in the residence.[13] He alleges, however, that defendant Hebert and other officers from the Lafayette Police Department conducted an illegal "exploratory" search and, based on this illegal search, obtained two more search warrants that ultimately resulted in the seizure of alleged stolen property from Alexander's house.[14] Alexander alleges that the information used to obtain these search warrants and to justify the seizure of his property were based on false and misleading information.[15]

Alexander filed the present case on September 19, 2011.[16] The case, however, was stayed on December 20, 2011, pending completion of Alexander's criminal proceedings in Louisiana state court—the 15th JDC. The case was administratively closed on August 26, 2015.[17] The Court subsequently granted Alexander's request to reopen the case on February 23, 2018.[18] After the case was reopened, the Court ordered Alexander to file amended complaints on two occasions in order to cure deficiencies in his complaints. Alexander complied with those orders and filed Amended Complaints.[19] The current live complaint was filed on August 16, 2018. On February 27, 2019, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending the dismissal of claims against approximately 23 of the defendants named in Alexander's Amended

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 8.
[16] ECF No. 1.
[17] ECF No. 49.
[18] ECF No. 102.
[19] ECF No. 104, 109.

Complaint, and the Court entered a partial judgment adopting the Magistrate Judge's recommendation.[20] Most of these dismissed claims involved claims against private businesses whose property was allegedly stolen by Alexander, or members of the media who Alexander claims assisted in the allegedly unlawful actions of the Lafayette Police Department. Claims against only nine defendants remain. On September 18, 2020 and November 3, 2020, the Magistrate Judge granted Alexander leave to serve the defendants. Alexander served the defendants by the deadline in the Magistrate Judge's order.

The Moving Defendants—Strong, Cormier, Craft, Hebert, Manceaux, Mayfield, Parker, Arceneaux, and LCG—filed a total of four motions requesting dismissal under Rules 12(b)(6) and Rule 4(m) (untimely service). The Moving Defendants divided their failure-to-state-a-claim arguments into separate motions: one motion focused solely on punitive damages and the other on their remaining arguments.

## II.
### RELEVANT LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[21] The facts alleged, taken as true, must state a claim that is plausible on its face.[22] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] A complaint is not sufficient

---

[20] Alexander appealed the partial judgment and, when that was unsuccessful, filed an application for writ of mandamus, which was also unsuccessful.
[21] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007).
[22] *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009).

if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."[24]

### III.
### ALEXANDER'S PROCEDURAL OBJECTIONS TO THE MOTIONS

Alexander raises three procedural objections to the present motions to dismiss. First, Alexander objects to the Moving Defendants filing separate Rule 12(b)(6) Motions challenging his punitive damage claims [ECF No. 159] and seeking to dismiss Alexander's claims on the grounds that his allegations fail to state a claim [ECF No. 162]. Alexander argues that Rule 12(g)(2) precludes the Moving Defendants from splitting their Rule 12(b)(6) arguments into separate motions. At first blush, Alexander's argument appears to be a correct reading of the relevant rules. Rule 12(g)(2) imposes a "consolidation" requirement on pre-answer Rule 12 motion practice:

> ***Limitation on Further Motions***. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Rule 12(g)(2) thus "contemplates a *single* pre-answer motion in which the defendant asserts all the Rule 12 defenses and objections that are then available to him or her."[25] Rule 12(g)(2) appears to create an exception for failure-to-state-a-claim defenses by referring to Rule 12(h)(2). Rule 12(h)(2) states:

> Failure to state a claim upon which relief can be granted…may be raised:
> (a) in any pleading allowed or ordered under Rule 7(a);
> (b) by a motion under Rule 12(c); or
> (c) at trial.

---

[24] *Id.* (quoting *Twombly*, 550 U.S. at 554-57).
[25] 5C Wright and Miller, Fed. Practice and Procedure: Civil 3d §1385; *see also* Baicker-McKee, Janssen & Corr, Civil Rules Handbook 507 (2020) ("If a defending party elects to do so; that party must include all of its Rule 12 defenses and objections then available in a single, omnibus motion").

However, none of the options in Rule 12(h)(2) are pre-answer motions under Rule 12(b).[26] Accordingly, in the case cited by Alexander, *In re Apple iPhone Antitrust Litig.*,[27] the Ninth Circuit held that a party could not split failure-to-state-a-claim defenses in multiple pre-answer Rule 12(b) motions. Indeed, at least one leading commentator agrees with the Ninth Circuit's view that the consolidation requirement of Rule 12(g)(2) requires that failure-to-state-a-claim defenses be included in a single omnibus motion.[28]

As the Moving Defendants point out, however, Alexander's argument ignores case law from the Fifth Circuit and other courts that rejects the Ninth Circuit's approach and views Rule 12(h)(2) as an exception to the consolidation requirement of Rule 12(g)(2) as far as pre-answer Rule 12(b)(6) motions.[29] This Fifth Circuit precedent is binding and dispositive of Alexander's objection. Accordingly, Rule 12(g)(2) does not preclude the Court from considering both Rule 12(b)(6) motions filed by the Moving Defendants.[30]

Second, Alexander argues that the two separate motions to dismiss filed by defendant Arceneaux [ECF Nos. 167, 168] are procedurally improper because Arceneaux is precluded from referencing and adopting the other motions under Rule 10(c). Rule 10(c) provides that a "statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other

---

[26] A pleading under Rule 7(a) includes "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." A Rule 12(c) request for judgment on the pleadings is filed "after the pleadings are closed."

[27] 846 F.3d. 313, 317-18 (9th Cir. 2017).

[28] 5C Wright and Miller, Fed. Practice and Procedure: Civil 3d §1385.

[29] *Nationwide by Weekly Admin, Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *Doe v. Columbia-Brazoria Ind. Sch. Dist.*, 855 F.3d. 681, 687 (5th Cir. 2017).

[30] In *Doe v. Columbia-Brazoria Ind. Sch. Dist.*, the Fifth Circuit reasoned that, even if Rule 12(g)(2) required the consolidation of the defendant's failure-to-state-a-claim defenses into a single Rule 12(b)(6) motion, its failure to do so was harmless. This Court notes, however, that splitting failure-to-state-a-claim arguments into multiple Rule 12(b)(6) motions may, under some circumstances, skirt a court's local rules as far as page limits on briefs. If so, and the parties have not requested and received leave to file a brief that exceeds these page limits, the Court may impose an appropriate remedy, including requiring the parties to submit a single, omnibus brief that complies with the local rules.

pleading." Alexander argues that Rule 10(c) does not permit Arceneaux's wholesale, blanket incorporation of another party's motion and brief.[31] The Court disagrees. As the Moving Defendants point out, Arceneaux was not served until after the Rule 12(b)(6) Motions by the other defendants were filed. Instead of a wholesale, blanket, incorporation of the arguments in the earlier Rule 12(6)(b) Motions, Arceneaux specifically identifies the portions of the earlier motion that he is adopting. Moreover, to the extent that Arceneaux's separate motions run afoul of Rule 10(c), this defect is harmless. Alexander's objection in this regard is overruled.

Third, Alexander objects to the Moving Defendants' reference to evidence beyond the allegations in the Amended Complaint. Specifically, the Moving Defendants attached copies of police incident reports,[32] affidavits and applications for search and arrest warrants,[33] and a Motion to Quash and the ruling of the state court on that motion from Alexander's state criminal proceeding.[34] The general rule is that a Court may not look beyond the parties' pleadings in deciding a Rule 12(b)(6) motion.[35] However, "it is clearly proper in deciding a 12(b)(6) Motion to take judicial notice of matters of public record."[36] The court may also properly consider documents attached to a defendant's motion to dismiss if the documents are referenced in the complaint and are central to the plaintiff's claims.[37] In *Roberts v. Wal Mart Louisiana LLC*[38] the court considered copies of the plaintiff's arrest warrants, affidavits for the warrants, and police reports associated with the warrants in considering a motion to dismiss section 1983 claims. The court concluded that

---

[31] ECF No. 175 at 9.
[32] ECF Nos. 162-3, 162-4, 162-5, 162-6.
[33] ECF Nos. 162-7, 162-8, 162-9, 162-10.
[34] ECF Nos. 162-11, 162-12, 162-13, 162-14.
[35] *Spivey v. Robertson*, 197 F.3d., 772, 774 (5th Cir. 1999).
[36] *Norris v. Hearst Trust*, 500 F.3d. 454, 461 n.9 (5th Cir. 2007).
[37] *Covington v. City of Madisonville, Texas*, 812 F.Appx 219, 224 (5th Cir. 2020) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).
[38] No. 15-0119, 2016 WL 6561523 at *3 (W.D. La. November 2, 2016).

it could consider these documents because the plaintiff had referenced the warrants in the complaint and the warrants were central to the plaintiff's claims.[39]

Here, Alexander expressly references the warrants at issue in Amended Complaint and these warrants are central to his claims.[40] The Court can, therefore, consider the warrants, applications for the warrants, and the affidavits supporting the applications for the warrants. As in *Roberts*, the Court will also consider the police incident reports.[41] Here, many of the police incident reports submitted by the Moving Defendants appear to have some connection with the search and arrest warrants referenced in the Amended Complaint. Alexander also specifically references the reports in his Amended Complaint.[42] Further, the court documents attached to the motions are public records, and the Court can take judicial notice. Accordingly, the Court overrules Alexander's objections to the documents attached to the Moving Defendants' motions.[43]

## IV.
## RULE 12(B)(6) MOTION AS TO PUNITIVE AND EXEMPLARY DAMAGES

Defendant LCG moves to dismiss Alexander's punitive damage claims on the grounds that they are barred under *City of Newport v. Fact Concerts, Inc.*[44] The Court agrees. Punitive damage claims under section 1983 against LCG are barred by *City of Newport*.[45] The Motions to Dismiss

---

[39] *Id.*

[40] *See, e.g.,* Amended Complaint, ECF No. 109 at 2-3.

[41] *Id.* at *2

[42] Amended Complaint, ECF No. 109 at 3-4.

[43] The Court notes that, unlike *Roberts*, Alexander alleges that the Individual Defendants were engaged in a conspiracy to retaliate against him for filing a civil rights lawsuit against the Lafayette Police Department. Although Alexander may ultimately be unable to prove this conspiracy, his allegations dispute the accounts provided by the Individual Defendants in their incident reports. Even though the Court may properly consider these reports, to the extent that Alexander's allegations and the reports merely create disputed questions of fact, the Court cannot resolve those questions on a motion to dismiss.

[44] 453 U.S. 247, 271 (1981).

[45] *See also Skyy v. City of Arlington*, 712 Fed.Appx. 396, 401 (5th Cir. 2017) ("When this circuit has had occasion to address the issue of punitive damages against a municipality we have faithfully applied *City of Newport*, rejecting attempts to impose punitive damages for constitutional and other violations where Congress has not expressed a clear intention to do so.").

the Punitive Damage Claims are therefore granted with respect to LCG.   The Individual Defendants further argue that the punitive damage claims asserted against them in their official capacities under section 1983 are similarly barred. The Court agrees. A suit against a public official in his or her *official* capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[46] Accordingly, just as punitive damages are unavailable from a municipality, they are likewise unavailable from an official sued in his or her official capacity.[47] Punitive damages are therefore unavailable against the Individual Defendants to the extent that they are based on actions taken in their official capacity.[48] The Motions to Dismiss the Punitive Damage Claims are granted with respect to the official capacity claims asserted against the Individual Defendants.

Alexander, however, argues that he has also asserted punitive damage claims against the Individual Defendants in their *personal* capacities. Defendants' motions appear to request dismissal of all the punitive damage claims against the defendants without distinguishing between claims brought against the defendant officers in their personal capacities versus their official capacities. A suit against a public official in his or her *personal* capacity seeks "to impose personal liability upon a government official for actions he takes under color of state law."[49] In this context, punitive damages are available to remedy intentional or reckless violations of civil rights.[50] Punitive damages are warranted "when the defendant's conduct is shown to be motivated by evil

---

[46] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all other respects other than name, to be treated as a suit against the entity.") (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978)).
[47] *Id.* at 167 n.13.
[48] *See, e.g., Lopez v. Billiot*, No. 09–0250, 2009 WL 1605297, at *3 (W.D. La. June 8, 2009).
[49] *Graham*, 473 U.S. at 165.
[50] *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Graham* at 167 n.13.

motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[51]

Alexander alleges that the Individual Defendants' unconstitutional actions resulted from "a long-term vendetta of the Lafayette City Police Department...."[52] Alexander alleges that the Individual Defendants "knowingly and intentionally provided and included false information in the warrant or application to obtain a warrant for search and seizure and the arrest of" Alexander.[53] Specifically, Alexander alleges that they knew that the information used in the applications for the warrants was stale or unreliable.[54] Alexander may ultimately fail  to prove these allegations. At the motion to dismiss stage, however, the allegations are sufficient to survive the dismissal of his punitive damage claims against the Individual Defendants in their personal capacity. Accordingly, the Motions to Dismiss the Punitive Damage Claims against the Defendants is GRANTED in part and DENIED in part. The Motion is GRANTED with respect to the punitive damage claims asserted against LCG and the Individual Defendants in their official capacities. Alexander's claims for punitive damages are dismissed in this regard. The Motion is DENIED with respect to Alexander's punitive damage claims against the Individual Defendants in their *personal* capacities.

## V.
### RULE 4(M) MOTION BASED ON UNTIMELY SERVICE OF PROCESS

Defendants next move to dismiss under Rule 4(m) of the Federal Rules of Civil Procedure on the grounds that they were not timely served. According to the Moving Defendants, "[t]o now hale Defendants into court approximately nine (9) years after this lawsuit was commenced poses great prejudice to the defendants, who had no prior notice of this suit."[55] Rule 4(m) permits a

---

[51] *Smith* at 56.
[52] Amended Complaint, ECF No. 109 at 7.
[53] ECF No. 109 at 8.
[54] *Id.* at 7.
[55] Defendants' Memorandum, ECF No. 162-1, at 3.

district court to dismiss a case without prejudice if the plaintiff fails to serve the defendant within 120 days of filing the complaint.[56] However, a court must extend the time for service if the plaintiff can show good cause for failing to serve the defendant.[57] The plaintiff bears the burden of showing good cause.[58] "Good cause," at a minimum, means excusable neglect and requires more than simple inadvertence, mistake or ignorance.[59] Even if the plaintiff lacks good cause, the court has discretionary power to extend the time for service.[60] For example, a court may exercise its discretion to extend the time for service "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."[61] Where, as here, prescription would likely bar the plaintiff's claims if the case is dismissed, a request to dismiss the case under Rule 4(m) should be reviewed under the same heightened standard for a dismissal with prejudice.[62] This heightened standard reflects the fact that dismissal with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim."[63] A court's "dismissal with prejudice is warranted only where 'a clear record of delay or contumacious conduct by the plaintiff' exists and a 'lesser sanction would not better serve the interests of justice.'"[64]

---

[56] *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir.1996). As the Moving Defendants point out in their Memorandum, Rule 4(m) was amended in 2015 to shorten the 120-day service requirement to 90-days. *Id.* at 3 n.1. Because this case was filed in 2011, the parties base their arguments on the 120-day service period in the pre-2015 version of the rule.

[57] *Id.*

[58] *Kersh v. Derozier,* 851 F.2d 1509, 1512 (5th Cir.1988).

[59] *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d at 1306

[60] *Id.*

[61] *Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321, 325–26 (5th Cir. 2008) (quoting FED.R.CIV.P. 4(m) advisory committee's note (1993)).

[62] *Boazman v. Econ. Lab., Inc.,* 537 F.2d 210, 213 (5th Cir.1976) ("Where the dismissal is without prejudice, but the applicable statute of limitations probably bars further litigation, the standard of review of the District Court's dismissal should be the same as is used when reviewing a dismissal with prejudice.").

[63] *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 247 (5th Cir.1980).

[64] *Gray v. Fid. Acceptance Corp.,* 634 F.2d 226, 227 (5th Cir.1981) (quoting *Durham v. Fla. East Coast Railway Co.,* 385 F.2d 366, 368 (5th Cir.1967) and *Brown v. Thompson,* 430 F.2d 1214, 1216 (5th Cir.1970)).

Alexander does not dispute that the defendants were not served within 120 days of the filing of his original complaint. However, he did not merely delay service for nine years as suggested by the Moving Defendants. The Court entered an order staying the case on December 20, 2011—before the expiration of the 120-day service deadline—and the case was ultimately administratively closed.[65] Alexander filed regular status reports pro se, as ordered by the Court.[66] On November 18, 2015, while the case was still administratively closed, Alexander filed forty-two (42) pleadings, including thirteen (13) Amended Complaints in violation of Rule 15 of Federal Rules of Civil Procedure.[67] The Magistrate Judge responded by entering an order barring Alexander from filing further pleadings without leave of the Court.[68] The case was not administratively reopened until February 23, 2018, after the completion of Alexander's state court criminal proceedings.[69] When the case was administratively reopened, the Court ordered Alexander to file an amended complaint, which he filed pro se on June 21, 2018.[70] After Alexander filed his amended complaint, he filed a motion with the Court requesting leave to serve the defendants.[71] The Magistrate Judge responded with an order requiring Alexander to file another amended complaint.[72] The Magistrate Judge also denied Alexander's motion to serve the defendants pending the filing of a new complaint.[73] On September 21, 2020, the Magistrate Judge granted Alexander's motion for an extension to serve the defendants and granted Alexander leave

---

[65] ECF No. 11, 49.

[66] *See, e.g.,* ECF No. 42-46.

[67] ECF No. 93.

[68] *Id.* Alexander attempted to appeal the Magistrate Judge's order and also a filed an application for a writ of mandamus. The appeals and request for mandamus were unsuccessful.

[69] ECF No. 102.

[70] ECF No. 104.

[71] ECF No. 106.

[72] ECF No. 107.

[73] On February 27, 2019, the Magistrate Judge issued a Report and Recommendation recommending that many of the claims and defendants in the Alexander's Amended Complaint be dismissed, and the Court adopted the recommendation in a partial judgment. Alexander appealed the Court's partial judgment and again sought mandamus relief. The appeal and requested mandamus relief were denied.

to serve the Moving Defendants within 45 days.[74] The Magistrate Judge then entered an additional order extending Alexander's deadline to serve the Moving Defendants for an additional 21 days.[75] Alexander served the Moving Defendants within the deadlines set by the Magistrate Judge.[76]

This background illustrates that Alexander's pro se prosecution of this case has been lengthy and often problematic, particularly with respect to repeated filings in violation of the Federal Rules of Civil Procedure. However, the case record also reflects that Alexander has repeatedly complied with orders entered by the Magistrate Judge and the Court with respect to filing status reports and amended complaints, even while representing himself pro se. Although the case was filed over ten years ago, it was administratively closed until 2018. Accordingly, the record does not reflect a "clear record of delay or contumacious conduct" by Alexander.[77] Even more importantly, Alexander was expressly granted an extension and leave to serve the defendants, and he complied with the Magistrate Judge's order by serving the defendants within the deadlines set by that order. The Court will not relitigate the timeliness of service at this point. In sum, the record in the present case does not support a dismissal under Rule 4(m) that would effectively be a dismissal with prejudice. The Rule 4(m) Motion to Dismiss is DENIED.

## VI.
### RULE 12(B)(6) MOTIONS—FAILURE TO STATE A CLAIM

### A.  Statute of Limitations.

Defendants argue that Alexander's section 1983 claims are barred by the statute of limitations and should be dismissed. A cause of action under section 1983 is a federal cause of action. However, section 1983 contains no independent limitations period. As a result, the "settled

---

[74] ECF No. 139.
[75] ECF No. 147.
[76] ECF No. 148-155.
[77] *See Gray* 634 F.2d at 227.

practice is to borrow an 'appropriate' statute of limitations" from the forum state.[78] The Fifth

Circuit has held that Louisiana's one-year prescriptive period for personal injury actions under La.

Civ. Code Ann. art 3492 governs the limitations period for section 1983 claims filed in Louisiana.[79]

The parties do not dispute that a one-year limitations period applies to Alexander's section 1983

claims. Federal law, however, governs *when* a section 1983 claim accrues for purposes of applying

the limitations period.  Under federal law, "the limitations period begins to run the moment the

plaintiff becomes aware that he has suffered an injury or has sufficient information to know that

he has been injured."[80] Accordingly,  a claim seeking damages under section 1983 for false arrest,

when the arrest is followed by criminal proceedings, accrues at the time the claimant is detained

pursuant to legal process.[81] Claims for illegal search and seizure accrue "the day that those injuries

occurred."[82] A claim seeking damages under section 1983 for false imprisonment accrues when

the alleged false imprisonment ends.[83] An alleged false imprisonment ends when the legal process

commences, such as by arraignment or appearance before a magistrate.[84]

 Applying these standards here, Alexander's section 1983 claims that are based on the

alleged illegal searches and seizures accrued no earlier than January 4, 2011—the date that the

first search warrant was executed. Alexander's remaining claims accrued after January 4, 2011.

Alexander filed his original complaint on September 19, 2011, well within the one-year limitations

period. Defendants, however, argue that the commencement of the case does not interrupt the

limitations period "if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at

---

[78] *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citation omitted).
[79] *See Lavellee v. Listi*, 611 F.2d 1129 (5th Cir.1980)
[80] *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992).
[81] *Wallace v. Kato*, 549 U.S. 384, 397 (2007).
[82] *Humphreys v. City of Ganado*, 467 Fed.Appx. 252, 255–56 (5th Cir. 2012) (citing *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).
[83] *Id.* at 389.
[84] *Id.*

trial."[85] Defendants contend that dismissal under Rule 4(m) for untimely service amounts to abandonment and that, as a result, the applicable limitations period was never interrupted.[86] This argument fails because, as explained above, the Court denied the Moving Defendants' motion to dismiss based on untimely service. The extent of the filings and activity reflected on the docket sheet also belies any inference that Alexander has abandoned his claims. The Rule 12(b)(6) Motions are DENIED to the extent that they seek dismissal based on limitations.

### B. Res Judicata and Collateral Estoppel.

Defendants next argue that Alexander's section 1983 claims are barred by res judicata or collateral estoppel. Specifically, Alexander filed a motion to quash in Louisiana state court challenging whether there was probable cause for the searches and seizures conducted by the Individual Defendants.[87] The state court denied the motion, and the Louisiana Third Court of Appeals and the Louisiana Supreme Court denied Alexander's applications for supervisory writs.[88] This court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."[89] The Full Faith and Credit Act provides that a state court judgment is entitled to "the same full faith and credit in every court within the United States ... as [it has] by law or usage in the courts of such State."[90] Accordingly, Louisiana law governs the preclusive effect of a Louisiana state court judgment on Alexander's section 1983 claims. Louisiana Revised Statute 13:4231 governs res judicata in Louisiana state courts. This provision bars relitigating a subject

---

[85] Defendants' Memorandum, ECF No. 162-1, at 21.
[86] *Id.*
[87] ECF No. 162-11.
[88] ECF No. 162-12, 162-13, 162-14.
[89] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).
[90] 28 U.S.C. § 1738.

matter arising out of the same transaction or occurrence as a previous suit, and encompasses both claim preclusion (res judicata) and issue preclusion (collateral estoppel):

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Applying Louisiana law here, the Louisiana state court's denial of Alexander's motion to quash during his criminal proceeding does not bar his section 1983 claims. First, the state court transcript of the hearing does not reflect the basis for the court's ruling. Under La. R.S. 13:4231, the Court must be able to discern the issues that the state court actually "litigated and determined." Here, the record includes the briefing on the motion to quash and a transcript of the evidentiary hearing on the motion.[91] At the conclusion of the hearing, the court states only that "the State has met its burden."[92] Courts have declined to apply res judicata or collateral estoppel under similar circumstances where the state court record does not reflect the court's factual findings and the court's reasoning for its ruling on a motion to suppress.[93] Second, even if the record reflected the state court's findings, there are no grounds to find that the state court's ruling on the motion to

---

[91] ECF No. 162-11, 162-12.

[92] ECF No. 162-12 at 69.

[93] *See, e.g., Dittmann v. City of Garland,* No. CIV.A.3:97-CV-1143-D, 1998 WL 574774, at *2–3 (N.D. Tex. Aug. 31, 1998) (declining to give preclusive effect to state court's ruling on a motion to suppress because the "court's three-line order summarily granted Dittmann's suppression motion to suppress without any recitation of the facts or law, or any explicit reasoning.")

quash "was essential to [the] judgment."[94] The state dismissed several of the criminal charges against Alexander and he was acquitted on the remaining charges. The relationship between the state court's ruling on the motion to quash and the ultimate judgment in the state case is unclear. Accordingly, the Court DENIES the Rule 12(b)(6) Motions to the extent that they seek dismissal based on res judicata or collateral estoppel.

### C. Municipal Liability and Official Capacity Claims.

Defendants next argue that Alexander's municipal liability and official capacity claims should be dismissed. Here, the entity is the Lafayette Consolidated Government ("LCG"), which is a named defendant. Contrary to the suggestion in Alexander's Opposition Memorandum, LCG cannot be held liable under section 1983 on any theory of vicarious liability.[95]   It may, however, be liable under *Monell v. Dep't of Soc. Servs.*,[96] for allegedly unconstitutional conduct that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[97]   To state a section 1983 *Monell* claim, a plaintiff must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right.[98] Official policies may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."[99] A plaintiff alleging a practice so common and well-settled as to represent municipal policy must show a pattern of conduct that is specific and similar

---

[94] *Id.*
[95] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), cert. denied sub nom. *Hicks-Fields v. Harris Cty., Tex.*, ___ U.S. ___, 138 S. Ct. 510 (2017).
[96] 436 U.S. 658, 690 (1978).
[97] *Id.*
[98] *Blanchard-Daigle v. Geers*, No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).
[99] *Id.*

to the constitutional violation alleged by the plaintiff.[100] In light of *Iqbal* and *Twombley*, Alexander must plead sufficient facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim.[101] This standard does not require Alexander to plead the relevant policy or widespread practice in exhaustive detail.[102] Nor is Alexander subject to a heightened pleading standard.[103] However, the bare requirements of notice pleading under Rule 8 of the Federal Rules of Civil Procedure require that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... *cannot be conclusory; it must contain specific facts*."[104] In short, Alexander must, at a minimum, identify the relevant policy, custom or practice that was the motivating force for the alleged constitutional violation.[105] In so doing, Alexander  "must do more than describe the incident that gave rise to his injury."[106]

---

[100] *Hicks-Fields*, 860 F.3d at 810.

[101] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—that the pleader is entitled to relief.'").

[102] *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–46 (S.D. Tex. 2011) (explaining that "only minimal factual allegations should be required at the motion to dismiss stage.").

[103] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (holding that *Monell* claims are not subject to a heightened pleading standard).

[104] *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997) (citation omitted) (emphasis added).

[105] *See Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("... we have required a plaintiff seeking to impose liability on a municipality under section 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."). *Thomas v. City of Galveston, Texas* provides a useful framework for applying this pleading standard. 800 F. Supp. 2d 826 (S.D. Tex. 2011). According to *Thomas*, a plaintiff is not required to "specifically state what the policy is, as the plaintiff will generally not have access to it." *Id.* at 844. However, the plaintiff must plead more than "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials." *Id.* at 845. The plaintiff's allegations must provide *fair notice* to the defendant with respect to the specific policies or customs that are being challenged. *Id.* at 844. For example, "allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Id.* (footnotes omitted)  In *Thomas*, the court concluded that the plaintiff's "lengthy" allegations did not satisfy this pleading standard because they "consist[ed] only of a list of number of broadly-defined constitutional violations (for example, 'excessive force' and 'unlawful searches and seizures') followed by the assertion that there was a pattern of such violations, that there was a failure to train, or that the violations resulted from improper hiring." *Id.* at 845.

[106] *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

Here, Alexander's allegations fail to state a plausible *Monell* claim against LCG because he does not identify any specific official policy promulgated by an LCG policymaker that was the moving force for the constitutional violations he alleges. Instead, he merely describes the individual actions of the defendants that resulted in his injuries and states, in a conclusory fashion, that it was the "policy" of defendant Craft—and, hence, the policy of LCG—to commit those alleged constitutional violations:

> Defendant Jim Craft, Former Lafayette City Police Chief, an evil parasite, who poisoned the tree of his department, ***maintained a policy or custom*** allowing employees under his control, to participate, under color of state law, while during the course and scope of their employment in unconstitutional search and seizure of plaintiff's property and his false arrest and imprisonment, malicious prosecution and the infliction of severe emotional distress.
>
> . . .
>
> …the defendant Former Lafayette City Police Chief Jim Craft implicated [sic] ***unconstitutional policies*** allowing and encouraging the illegal acts knowing that the affidavit involving firearms, etc. Submitted before him for approval made by Police Officer Kristina Bernard, to obtain a search warrant on Plaintiff Albert K. Alexander's, residence located at 212 1-B Street Lafayette, La 70501, was made unconstitutionally without any commission of any crime committed by the plaintiff, involving firearms, etc.[107]

Describing the actions of the Individual Defendants in connection with alleged illegal searches and seizures may support *personal* capacity claims against these defendants. But merely attaching the conclusory statement that it was the "official policy" of LCG to allow these violation to occur does not convert these personal capacity claims into a *Monell* claim against LCG.[108] At another point in the Amended Complaint, Alexander alleges that the "Lafayette Police Department did not follow policy/ procedure in as much if an alleged crime is believed to have occurred, the arresting

---

[107] Amended Complaint, ECF No. 109, at 5-6 (emphasis added).
[108] *Ratliff*, 948 F.3d at 285; *Thomas*, 800 F. Supp. 2d at 845 (the plaintiff's "lengthy" allegations did not satisfy this pleading standard because they "consist[ed] only of a list of number of broadly-defined constitutional violations (for example, 'excessive force' and 'unlawful searches and seizures') followed by the assertion that there was a pattern of such violations, that there was a failure to train, or that the violations resulted from improper hiring.")

officer(s) must take the alleged stolen property into custody…until a trial regarding the same can be conducted."[109] This allegation, however, states that a *violation* of official policy by individual defendants caused his constitutional injuries, not that the policy itself was the "motivating force" for Alexander's injuries. These allegations of a policy violation, standing alone, do not support a *Monell* claim against LCG. Alexander references no other policy or custom with respect to the Moving Defendants. Accordingly, the Court GRANTS the Rule 12(b)(6) Motions with respect to the *Monell* claims asserted against LCG. Those claims are DISMISSED.

The Court further GRANTS the Rule 12(b)(6) Motions with respect to the official capacity claims against the Individual Defendants. Claims against an official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent."[110] Here, the entity is LCG and Alexander has not pled a viable *Monell* claim against LCG. Accordingly, the claims against the Individual Defendants in their official capacities are DISMISSED.

### D. Individual Liability Under Section 1983.

The Moving Defendants next argue that Alexander has not stated plausible section 1983 claims against the Individual Defendants in their personal capacities. Without addressing each of the arguments raised in the motions, the Court notes that Alexander's personal capacity claims against the Individual Defendants are deficient in at least four respects.

First, Alexander's Amended Complaint does not clearly identify the nature of the claims he is asserting against the Individual Defendants or the factual basis for those claims. Alexander appears to be alleging unconstitutional search and seizure, false arrest, false imprisonment, and malicious prosecution claims. His Amended Complaint, however, asserts 20 distinct claims, of

---

[109] Amended Complaint, ECF No. 109, at 9.
[110] *Hafer v. Melo*, 502 U.S. 21 (1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).

which 7 of these claims—claims 1-6 and 10—appear to be asserted against the Individual Defendants.[111] Many of the allegations supporting these claims are conclusory and, in some cases, nonsensical.[112] These claims also do not clearly identify which claims are asserted against which defendants. For example, Alexander identifies defendants Mayfield and Parker with respect to his second claim,[113] and appears to allege an illegal search and seizure. In his third claim, however, Alexander names Parker again along with defendant Strong, and similarly alleges an illegal search and seizure. In sum, Alexander's allegations do not provide fair notice of the claims he is asserting and the factual underpinnings for those claims.

Second, Alexander frequently refers to defendants and other employees of the Lafayette Police Department collectively in alleging his claims. Legal liability is "personal."[114] Accordingly, "a plaintiff bringing a Section 1983 Action must specify the personal involvement of *each* Defendant"[115] Courts have often concluded that allegations that plead liability with respect to a collective group of defendants without distinguishing the conduct of each individual defendant are deficient.[116] While such collective allegations of liability are not always a fatal pleading deficiency, the Fifth Circuit has cautioned that "each defendant is [still] entitled to know what he or she did that is asserted to be wrongful."[117]

---

[111] Amended Complaint, ECF No. 109 at 5-14.

[112] For example, Alexander alleges that "on or about January 2, 2011, Officer Calvin Parker the Poisonous Fruit was called by Office [sic] Jarvis Mayfield the Poisonous Tree to come to his apartment at Whisper Oaks Apartments, Apartment Number 108 so that they could come up with a plan against Plaintiff, Albert K. Alexander in order to be honored by their superior, former Chief Jim Craft the Evil Parasite who poisoned the tree of this department knowing that the Plaintiff, Alexander had filed a Civil Right [sic] action against their department...."

[113] ECF No. 109 at 7.

[114] *Bank of Am. NA v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

[115] *Ahmadiv v. Downey*, No. 18-0211, 2021 WL 1227918 at *9-10 (S.D. Tex. Mar. 31, 2021) (Quoting *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).

[116] *See, e.g., Caine v. City of New Orleans*, No. 15-4479, 2016 WL 2849498, at *5 (E.D. La. May 13, 2016).

[117] *Martinez v. City of North Richland Hills*, 846 F.Appx. 238, 243 (5th Cir. 2021) (quoting *Heartland Consumer Products LLC v. DineEquity, Inc.*, No. 17-1035, 2018 WL 465784, at *4 (S.D. Ind. Jan. 18, 2018)).

Alexander's collective mode of pleading liability does not give fair notice to the Individual

Defendants. For example, Alexander asserts a distinct claim alleging that members of the Lafayette

Police Department illegally seized his dogs:

> Upon information and belief, on January 4, through January 6, 2011, The Lafayette City
> Police Department's malicious acts were not just limited to damaging Plaintiff Alexander's
> residence; their agenda was also thrust upon the Alexander family pets. The family loved
> and adored their two pets (2) black Labrador retrievers …. Upon the Lafayette City Police
> Department entering the property of Mr. Alexander, the two (2) family dogs were housed
> securely each in their own kennel. However, the Lafayette City Police Department made
> the conscious decision to have the dogs euthanizes through the Humane Society….
>
> Upon information and belief, on or about January 4, 2011, the Lafayette City Police
> Officers, individual and official capacity at the time of the unconstitutional search and
> seizure, seized plaintiff Albert K. Alexander's children's black Labrador retriever dogs,
> who were both inside of their own kennel, having their own house and space in the rear of
> the second back house on the residence located at 212 1-B Street Lafayette, Louisiana, not
> described in the search warrant.[118]

Here, Alexander pleads liability collectively—referring generally to the actions of the "Lafayette

City Police Department"—without identifying the role of the Individual Defendants in the

allegedly illegal seizure. Alexander ultimately alleges that defendants Hebert, Strong, and Parker

prevented Alexander's family members from entering the crime scene to care for the dogs and

"rudely turned them away" but the allegations do not identify the role of these individual

defendants in the seizure of the dogs.[119] Preventing family members from entering an area subject

to an ongoing search pursuant to a warrant does not, alone, violate the Fourth Amendment. With

respect to other claims, Alexander's Amended Complaint alleges the conduct of individual

defendants but then lapses back into pleading liability collectively. Courts will often ignore

allegations referring to a collective group of defendants and determine whether allegations that

specify the conduct of individual defendants are sufficient to state a claim.[120] However, along with

---

[118] Amended Complaint, ECF No. 109 at 11.
[119] Id. at 12.
[120] See, e.g., Cubas v. St. James Parish Schools, 20-1322, 2021 WL 1212537, at *7 (E.D. La. Mar. 31, 2021).

the other pleading deficiencies in Alexander's Amended Complaint, these collective allegations of liability do not provide the Individual Defendants with fair notice of their *personal* role in the constitutional violations alleged by Alexander.

Third, Alexander does not adequately plead a basis for defendant Craft's personal liability. Craft is the former Chief of Police for the City of Lafayette and was, therefore, a supervisory official at the time of the events underlying Alexander's claims.[121] A personal capacity claim against Craft as a supervisory official must be grounded on his *personal* conduct.[122] Supervisory officials like Craft, cannot be held liable for the actions of their subordinates because section 1983 does not "create supervisory or respondeat superior liability."[123] Alexander does not plead facts showing defendant Craft's *personal* involvement in the conduct that Alexander alleges violates the Constitution. For example, under Alexander's first claim, he alleges that Craft's "unconstitutional action…was the result of said City Police Department's retaliation against" Alexander.[124] Alexander's Amended Complaint then goes on to describe the actions of Craft's subordinates with a conclusory allegation that Craft's "policy" allowed these allegedly unconstitutional actions.[125] These allegations are insufficient to state a plausible section 1983 claim against defendant Craft in his personal capacity.

Fourth, because of the pleading deficiencies outlined above, it is unclear whether Alexander can avoid a qualified immunity defense with respect to the Individual Defendants. Because qualified immunity protects officials from unwarranted liability and "costly, time, consuming, and intrusive" pre-trial discovery, there is a strong policy interest in determining

---

[121] Amended Complaint, ECF No. 109 at 2.
[122] *Maze v. Garber*, No. 19-953, 2020 WL 2892174, at *4 (W.D. La. June 1, 2020).
[123] *Oliver v. Scott*, 276 F.3d 736, 742 n. 6 (5th Cir. 2002). In his Amended Complaint, Alexander repeatedly and erroneously alleges that Craft's liability is grounded on the doctrine of respondeat superior. Amended Complaint, ECF No. 109 at 5, 7, 12, 14, 22.
[124] Amended Complaint, ECF No. 109 at 5.
[125] *Id.*

qualified immunity "at the earliest possible state of litigation."[126] Accordingly, the applicability of the defense may be addressed at the motion to dismiss phase.[127] The Individual Defendants have expressively raised the applicability of qualified immunity in their motions to dismiss.[128] Whether an officer is entitled to qualified immunity turns on a two-prong inquiry. First, do the facts alleged or shown by the plaintiff demonstrate that a constitutional right has been violated?[129] Second, was that right "clearly established" at the time of the defendant's alleged misconduct?[130] Because of the pleading deficiencies outlined above, Alexander's Amended Complaint does not satisfy either prong of the qualified immunity standard.

In sum, Alexander's Amended Complaint does not plead plausible section 1983 claims against the Individual Defendants in their personal capacities. However, as explained below, the Court will grant Alexander leave to file an amended complaint that addressees the pleading deficiencies outlined above. Accordingly, the Court will DENY the Moving Defendants' motions to dismiss without prejudice with respect to the claims against the Individual Defendants in their personal capacities. The Individual Defendants may re-urge their motions to dismiss after Alexander complies with the Court's order to amend his complaint.

### E.  Disposition of Motions and Order to File Amended Complaint.

The Court grants Alexander leave to file an amended complaint to address the deficiencies outlined above with respect to his claims against the Individual Defendants in their personal capacities. Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely"

---

[126] *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (Quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

[127] *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) ("the doctrine of qualified immunity, however, adds a wrinkle to Section 1983 pleadings when qualified immunity is relevant.").

[128] See ECF 162-1 at 22.

[129] *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

[130] *Id.*

grant leave to amend when "justice so requires." The present case certainly stretches the limits of this permissive rule. Specifically, this case has been pending over ten years and Alexander has been given the opportunity to amend his complaint multiple times to state plausible claims against the defendants. Some of those claims have already been dismissed with prejudice.[131] On the other hand, this case was stayed and administratively closed for almost seven of those ten years and, until 2019, Alexander was proceeding pro se. More importantly, despite the age of the case, this is the first round of motions to dismiss that have been filed. Considering the allegations in the Amended Complaint and the arguments raised in Alexander's Opposition to the Motions to Dismiss, the Court cannot conclude that an amendment of Alexander's personal capacity claims against the Individual Defendants would be futile. Accordingly, the Court ORDERS Alexander to file an Amended Complaint within thirty (30) days that addresses the pleading deficiencies in his personal capacity claims. The Court cautions Alexander that, given the age of this case and the prior opportunities to amend his complaint, the Court will not grant him additional leave to amend nor will the Court grant him any extension of the time to file an amended complaint absent extraordinary circumstances.[132]

   The leave granted by the Court is limited. The Court has granted the Rule 12(b)(6) Motions with respect Alexander's *Monell* claims against LCG and the official capacity claims against the Individual Defendants. The Court does not grant leave to amend these claims. Unlike the personal capacity claims, Alexander's Amended Complaint pleads virtually no facts to support the elements

---

[131] *See* ECF No. 114, 123

[132] The Court notes that the volume of briefs and exhibits submitted in connection with the present motions to dismiss is extensive for a Rule 12(b)(6) motion practice in a section 1983 case—almost 300 pages of briefs and exhibits for the Moving Defendants and over 100 pages of briefs for Alexander. The Court expects that the disposition of certain legal issues and an amended complaint that addresses the pleading deficiencies in the prior complaint will help to focus any remaining issues that might arise if there is another round of motions practice. The Court granted previous requests to file briefs in excess of the page limits in the local rules. However, the Court cautions the parties that it will not be inclined to grant similar extensions on future motions to dismiss, if any.

of a *Monell* claim against LCG. Allowing an amendment of his *Monell* claims at this stage would essentially allow Alexander to introduce wholly new theories of liability into the case. Moreover, Alexander's Opposition to the motions to dismiss does not explain how any amendments to these claims would cure the deficiencies outlined above.

Furthermore, although Alexander refers to Louisiana state law on a number of occasions in the Amended Complaint, it is not clear that the Amended Complaint asserts state law causes of action independent of the federal claims expressly pled in the complaint. Accordingly, the Court does not grant Alexander leave to add state law claims for the first time in an amended complaint.

Finally, the Magistrate Judge issued an R&R that recommended the dismissal of certain claims and defendants, and the Court adopted the R&R by entering a partial judgment dismissing these claims.[133] Leave is not granted to re-plead claims that the Court previously dismissed in this partial judgment.

## VII.
### CONCLUSION

For the reasons stated above, the Court rules as follows with respect to the pending Motions to Dismiss:

(1) The Motion to Dismiss for Failure to State a Claim [ECF No. 162] is GRANTED in part and DENIED in part. The motion is GRANTED with respect to the *Monell* claims against LCG and the official capacity claims asserted against the Individual Defendants. In all other respects, the motion is DENIED without prejudice. The defendants may re-urge their motion to

---

[133] *See* ECF No. 114, 123.

dismiss with respect to any amended complaint filed by Alexander in accordance with the Court's ruling herein.

(2) The Motion to Dismiss for Failure to State a Claim filed by defendant Arceneaux [ECF No. 167] is GRANTED in part and DENIED in part on the same basis as the Court's ruling on ECF No. 162.

(3) The Motion to Dismiss Penalty, Punitive, or Exemplary Damages [ECF No. 159] is GRANTED in part and DENIED in part. Any claims for penalty, punitive, or exemplary damages against LCG or the Individual Defendants in their official capacities are DISMISSED. In all other respects, the Motion is DENIED.

(4) The Motion to Dismiss Penalty, Punitive, or Exemplary Damages filed defendant Arceneaux [ECF No. 168] is GRANTED in part and DENIED in part on the same basis as the Court's ruling on ECF No. 159.

The Court further ORDERS Alexander to file an Amended Complaint that addresses the deficiencies noted with respect the personal capacity claims asserted against the Individual Defendants within thirty days (30) of this ruling. Leave to Amend is DENIED with respect to all other claims and defendants.

THUS DONE in Chambers on this 23rd day of September, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE